(No. 32709.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH VITALE, Plaintiff in Error.

*Opinion filed May 24, 1954.*

Stanton, Stanton & Gleeson, of Chicago, for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, Arthur F. Manning, and Robert J. McDonald, all of Chicago, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

On August 30, 1951, Joseph Vitale filed his original petition in the criminal court of Cook County, seeking relief under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1951, chap. 38, pars. 826-832.) A hearing was had, and an order was thereafter entered denying relief. We have allowed a writ of error to review the proceedings.

In 1935 ten indictments for murder were returned by the Cook County grand jury against three defendants: Frank Vitale, Joseph DiChiara and petitioner Joseph Vitale. Each charged the murder of one certain person (ten in all,) not named in any of the other nine indictments, by

the felonious burning of a dwelling. Each defendant entered a plea of not guilty, and trial was begun. At the close of the People's case Joseph Vitale withdrew his plea of not guilty and entered a plea of guilty to each indictment. He was sentenced to imprisonment for a term of 199 years on each indictment, the sentences to run concurrently. The other two defendants were found guilty by the jury at conclusion of the trial, and each received a sentence of 99 years' imprisonment.

Petitioner alleges that at the time of the trial he could understand only the Sicilian dialect of the Italian language, and was unable to speak or understand any other Italian dialect or the English language; that both his attorney and the police officer who had interrogated him spoke an Italian dialect incomprehensible to him; that after his arrest he was physically beaten and mistreated by the police; that he signed a confession or statement of his codefendant DiChiara, by affixing an "x" thereto, through ignorance and fear of further beatings; that the conduct of the trial judge was highly prejudicial and, in particular, that he made prejudicial remarks during the course of the trial; that the questions asked him by the court prior to accepting his change of plea were not stated in Italian and were not understood by him; that his affirmative answers were made from fear created in him by the previous beatings and the frightening atmosphere of the trial; and that the attorney who represented him upon the original trial, failed to properly present his case.

To support his allegations he produced the testimony of himself, his wife, and a physician. The latter testified to petitioner having an old fracture of the rib, long since healed. Vitale testified, through an interpreter, that after his arrest the police tied a cloth over his eyes and severely beat him; that he became acquainted with his attorney "when we had the trial;" that a day or two before the trial the attorney "came in for about 2 minutes," and Vitale

had no opportunity to talk to him; that during the trial his attorney informed him if he would not plead guilty both he and the attorney would be killed, and if he did plead guilty the charge would be only arson, for which the maximum penalty was 20 years; that he speaks the Sicilian dialect and had difficulty understanding the Italian spoken by his attorney. He further testified that he did not understand the statements and questions of the judge; that he was afraid of the judge; and that he now does not remember pleading guilty to the charge. Petitioner's wife testified that she engaged the attorney.

As additional evidence petitioner submitted the affidavits of his brother, his wife, and each of his codefendants. In their affidavits the brother and wife state that petitioner was unable to understand any language other than the Sicilian dialect of the Italian language; that at the time of the trial he was suffering from broken ribs and injured arms, and was in a highly nervous state; and that relatives of deceased persons created a hostile atmosphere in the courtroom. In the affidavits of the codefendants it is stated that petitioner was in no way involved in the commission of the offense in question; and that he was severely beaten by police officers and forced to place his "x" on the written statement or confession.

To overcome petitioner's evidence the People introduced the testimony of the attorney who represented petitioner at the trial. The relevant portion of his testimony is as follows: "At the conclusion of the State's case I conferred with my client and advised him to plead guilty if he could escape from the chair. I conversed with him both in English and Italian. He could speak and understand English and understood what I was advising him to do. Judge David fully advised the petitioner of what his plea of guilty could mean and the petitioner understood the advice as given by Judge David." In addition, one of the police officers, present when petitioner marked

the statement of DiChiara after his arrest, testified that no one at that time beat or struck him, and that when he talked to petitioner in English the latter responded in English and understood him. A transcript of the original trial introduced in evidence contains testimony of two police officers to the same effect, given at the hearing on admissibility of the DiChiara statement.

The question presented to this court is whether the trial court erred in finding that no constitutional right of petitioner was violated in the 1935 proceeding. The determination of that question depends, in part, upon whether petitioner's plea of guilty was understandingly and voluntarily made or whether, on the other hand, it was induced by fear of physical violence and ignorance of its consequences. The intent of our law is to secure to a person charged with crime the right to a trial by jury unless he should, after an opportunity to fully and fairly understand the consequences of a plea of guilty, waive that right. Ordinarily a waiver sufficiently appears where recitals in the record show the defendant was duly informed and admonished by the court. But in cases where defendant does not understand the English language, due process requires some further showing that he comprehends the meaning and effect of his plea. (*Marino* v. *Ragen,* 332 U.S. 561.) The presence of such handicaps may lend a different character to objections which would otherwise be insufficient to question the legality of the proceeding. (See *People* v. *Nitti,* 312 Ill. 73, 89.) It is also essential to a valid waiver that it result not from fear and coercion but from voluntary choice.

The evidence on behalf of petitioner, standing alone, tends to show that he did not fully understand the explanations and questions of the court; that his affirmative answers were given through fear and ignorance; and that he did not realize the consequences of his plea of guilty. But the factual issue must be decided on all the evidence.

When the testimony on behalf of the People is weighed against petitioner's evidence, it is clear that the latter is not sufficient to require us to upset the trial court's finding. The court below, who saw and heard the witnesses testify, was fully justified in concluding that petitioner's plea had been understandingly made.

Petitioner makes complaint with respect to the conduct of the trial judge, asserting that it was highly prejudicial and, in particular, that he made prejudicial remarks during the course of the trial. Petitioner has not directed attention, however, to any specific alleged acts of misconduct by or to any alleged prejudicial remarks of the judge. Under such circumstances, the question is not open to review. Although no duty devolves upon a court of review to search the record where alleged prejudicial misconduct is not specified, we have carefully examined the record made upon the original trial. Our examination discloses that such remarks by Judge David as may have been deemed prejudicial by petitioner were made out of the presence of the jury. Most of his comments were made at the hearing upon the admissibility of the confession or statement of DiChiara, one of the co-defendants. The trial judge did ask questions from time to time of witnesses,— those testifying for petitioner and his two co-defendants and those testifying for the prosecution. Several witnesses were testifying through interpreters and many of the questions asked by Judge David were not only proper, but necessary. His conduct of the trial and, in particular, in the presence of the jury, exhibited a deep desire to be fair to each of the three defendants. We find that the record does not support the complaint concerning the conduct of the trial judge.

Throughout the present proceeding petitioner has contended that the attorney who represented him upon the original trial failed to properly present his case. Charges of ineptitude are based largely upon the course pursued

by the attorney in advising petitioner to withdraw his plea of not guilty and plead guilty. This advice was given and followed, not prior to trial as in the usual case but near the end of a long trial. Although the question of competency of counsel of an accused's own choice when urged on a post-conviction hearing does not present a constitutional question (*Mitchell* v. *People,* 411 Ill. 407,) we have considered the contention and find it is without merit. The decision to recommend a plea of guilty reflected an appraisal by his attorney of the situation as it then existed, with a strong likelihood that if the case went to the jury the death sentence would be imposed. We cannot now say that the decision then made indicated a lack of competence on the part of defendant's counsel.

At the time of the original trial, attorney Roland V. Libonati, who represented petitioner, had been a member of the bar of this State for eleven years. He was familiar with the practice in the criminal court. Prior to November, 1935, he had tried fifty-four cases for murder and other major crimes, and was familiar with the practice and procedure in murder cases. The attorney was of Italian extraction as was petitioner. He talked with and advised him in Italian.

Notwithstanding repeated intimations that petitioner comprehended only the Sicilian dialect, a close scrutiny of the record discloses that he understood Italian generally and there is, in fact, evidence that he could speak, or at least understand, English. His attorney testified that he spoke and understood English, and that he had never contended to the contrary. With respect to petitioner's allegation that, in 1935, he could understand only the Sicilian dialect, the attorney testified that he, himself, spoke various dialects, Neapolitan and Sicilian; that his parents came from central Italy; that the dialect there is no different than the language of a Chicagoan when compared with that of a southerner or a Brooklynite.

The consequences of a plea of guilty were painstakingly explained to petitioner in English by Judge David and by attorney Libonati in Italian. And the transcript discloses an understanding by petitioner of the explanation of the plea of guilty. Indeed, the record made upon the original trial discloses nothing in the nature of dissatisfaction by petitioner with his attorney or his manner of conducting and participating in the hearing.

After the plea of guilty, evidence in aggravation and mitigation was considered upon the evidence already adduced before the court and jury. The trial judge observed that he thought as far as the defendant was concerned his case was not as aggravated as the others in that the defendant did not expect any financial return nor was there anything to indicate that he was to be the beneficiary and concluded that "While it is a terrible case, still the court thinks that having pleaded guilty that his case is different from the others."

Complaint is made that, upon the post-conviction hearing, the court erred in failing to consider the Behavior Clinic psychiatric examinations and affidavits which, it is asserted, completely exonerated petitioner upon the trial of 1935. Alleged errors in the admission of or refusal to admit evidence contained in affidavits do not present questions involving violations of constitutional rights. *People v. Farley*, 408 Ill. 288, 292.

A review of the entire record shows that petitioner received a fair hearing; that he was adequately represented at the original trial and has been capably represented in the present proceeding both in the criminal court and in this court.

After a careful examination of this record we conclude that the criminal court did not err in denying the petition. The judgment must therefore be affirmed.

*Judgment affirmed.*