Fuld, J.
Convicted of the crime of feloniously possessing a narcotic drug with intent to sell (Penal Law, § 1751), defendant seeks a reversal on the ground that the principal witness against him testified falsely, to the knowledge of the prosecutor who stood by in silence.
The relevant facts are briefly stated. Arthur Mantzinos, apprehended while picking up a quantity of marijuana from a locker in a New York City bus terminal, implicated defendant, *556 Savva Savvides, as the one from whom he had obtained the narcotic drug. When Mantzinos pleaded guilty to the first count of the indictment, felonious possession with intent to sell, which carried with it a mandatory minimum sentence, the assistant district attorney advised the court that the plea was taken with the “understanding” that, upon Mantzinos’ “ continued, truthful co-operation,” the district attorney would “ permit ” him to withdraw it and plead guilty to a lesser crime, one carrying no mandatory minimum.
Upon Savvides ’ trial, before a different judge, the People introduced a confession ascribed to him, which he repudiated, as well as incriminating testimony by Mantzinos, which he dénied. The court and jury, however, were never informed of Mantzinos’ understanding with the district attorney, the consideration promised for his continued co-operation. Indeed, though questioned at some length on the subject, the witness actually denied that he expected “ any consideration ” in return for his testimony. The assistant district attorney, the same one who had been in charge of the case against Mantzinos, remained silent.
Some days after the jury found Savvides guilty, the agreement with Mantzinos was carried out. The court, assured by the district attorney that Mantzinos’ co-operation was “ the ultimate factor ” in obtaining that conviction, suspended execution of the one to two year sentence of imprisonment which it had imposed, after allowing him to withdraw his original plea and plead guilty to an attempt.
On the day set for his sentence, defendant, having learned about the undertaking, moved to set aside the verdict that had been returned against him. Following.the court’s denial of that motion and some time after he had been sentenced, he applied for an order in the nature of a writ of error coram nobis, and that too was denied. On appeal to the Appellate Division, both the judgment and the order were affirmed.
' The conviction cannot stand. The administration of justice must not only be above reproach, it must also be beyond the suspicion of reproach. The prosecutor should have corrected the trial testimony given by Mantzinos and the impression it created. He should have, by immediate statement of his own or by further appropriate examination of Mantzinos, forthrightly exposed the lie, so that the court and jury would have known that the witness had reason to expect lenient treatment *557 for “ continued * * * co-operation His failure to do so constitutes “ error so fundamental, so substantial,” that a verdict of guilt will not be permitted to stand. ((People v. Creasy, 236 N. Y. 205, 221.)
It is of no consequence that the falsehood bore upon the witness’ credibility rather than directly upon defendant’s guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth. Nor does it avail respondent to contend that defendant’s guilt was clearly established or that disclosure would not have changed the verdict. The argument overlooks the variant functions to be performed by jury and reviewing tribunal. “It is for jurors, not judges of an appellate court such as ours, to decide the issue of guilt.” (People v. Mleczko, 298 N. Y. 153, 163.) "We may not close our eyes to what occurred; regardless of the quantum of guilt or the asserted persuasiveness of the evidence, the episode may not be overlooked. That the district attorney’s silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair. -
Although, in the view we have taken, it may not be necessary to determine the actual effect of the prosecutor’s conduct, the resulting prejudice to Sawides may not be characterized or discounted as harmless.
Where a promise of leniency or other consideration is held out to a self-confessed criminal for his co-operatión, there is grave danger that, if he be weak or unscrupulous, he will not hesitate to incriminate others to further his own self-interest. Long experience in granting leniency to “ co-operative ” accomplices has undoubtedly shown the hazards in the practice to be more than offset by benefits to society in the detection and punishment of crime. It requires no extended discussion, however, to establish that the existence of such a promise might be a strong factor in the minds of the jurors in assessing the witness’ credibility and in evaluating the worth of his testimony. The failure to disclose an ‘ ‘ understanding ” or a promise cannot but seriously impair the jury’s ability to pass upon this vital issue, and that is precisely the infirmity under which the jurors labored in the case before us.
*558 It is true that in his interrogation the judge elicited some vague answers which might have induced the jury to believe that Mantzinos was “ hoping ” for leniency, and in his charge he indicated his own belief that the witness entertained such a hope. But that is a far cry from positive knowledge that Mantzinos had actually been assured consideration in return for continued co-operation and that he had deliberately lied about the matter on the stand. Had the jury been apprised of the facts, it would have been in a better position to evaluate his veracity. In the first place, the conditional promise of consideration, the jurors could have concluded, furnished strong motivation for ‘ ‘ co-operation ’ ’ exceeding the bounds of truth. And, in the second place, even more significant because more revealing of the man, knowledge that Mantzinos had lied under oath might well have lowered the jurors’ assessment of his regard for the truth in general and, by that token, affected their appraisal of his other testimony incriminating defendant.
Convincing though proof of guilt may be, and there can be no denial of its strength in this case, we could here affirm “ only if we were to announce a doctrine that the fundamentals of a fair trial need not be respected if there is proof in the record to persuade us of defendant’s guilt.” (People v. Mleczko, supra, 298 N. Y. 153, 163.) We were not in Mlec&ko, and we are not now, prepared to announce such a doctrine.
The judgment of conviction should be reversed and a new trial ordered; the order affirming denial of the motion for a writ of error coram, nobis should be affirmed.
Conway, Ch. J., Desmond, Dye, Froessel, Van Voorhis and Burke, JJ., concur.
Judgment of the Appellate Division and that of the Court of General Sessions reversed and a new trial ordered.
Order affirmed.