(No. 33629.—<span style="background:black">        </span>

WILLIAM ALFRED DAVIES, Plaintiff in Error, *vs.* THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error.

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

John F. Sembower, of Chicago, for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (Fred G. Leach, Edwin A. Strugala, Irwin D. Bloch, John T. Gallagher, Rudolph L. Janega, and William L. Carlin, of counsel,) for the People.

Mr. Justice Bristow delivered the opinion of the court:

William Alfred Davies, herein called petitioner, seeks to reverse the judgment of the criminal court of Cook County which denied him relief under the Post-Conviction Hearing Act. Ill. Rev. Stat. 1955, chap. 38, pars. 826-832.

In 1938 petitioner was convicted separately of murder and robbery, the former drawing a sentence of 30 years, the latter, of indeterminate duration, one year to life. Having been discharged under the murder commitment, petitioner in these proceedings seeks escape from the remainder of his robbery sentence.

In his petition it is alleged· that both convictions resulted from the use of coerced confessions. He further charged that he was arrested without a warrant and by subterfuge, that for eleven days he was detained and permitted to communicate with no one; that he underwent prolonged questioning and tortuous beatings by police officers; that his wife and infant baby were threatened and mistreated; and that he was represented by incompetent counsel.

The State opposed the petitioner's request for a new trial, and after a hearing, the trial court dismissed the petition. We allowed a writ of error and appointed counsel to represent him before this court.

It appears from the petitioner's evidence that the admissibility of his confessions was raised at the original trial

in 1938, and that he then presented evidence (both to the court outside the presence of the jury and later before the jury) of police coercion and misconduct in extracting the confessions. But he did not present a transcript of this evidence for consideration in the instant proceeding, nor did the State do so.

The petitioner testified to the following: The police arrested him without a warrant on the morning of January 2, 1938, and took him and his wife into custody. During that day and the next, he was shuttled from one station to another. While in custody, various police officers beat him, slapped him in the face, "backhanded" him, struck him in the stomach and kicked his shins. On three occasions they blindfolded him, handcuffed his hands behind him, and by placing a rope between the handcuffs suspended him from a door with his hands behind him and his feet off the floor. While he was in this position he was beaten in the stomach until he fainted.

He had no sleep the nights of January 2, 3 and 4, and during January 2 and 3 had only two bologna sandwiches to eat. Sometime during January 3, an unidentified, elderly man told him that his wife was also locked up, and that unless he confessed their baby would be taken from them by proving his wife was an unfit mother. He later saw his wife who confirmed this threat.

After the conversation with his wife, the petitioner was taken to an office where various police officers and a court reporter were present. This was in the early morning of January 4. He was read a statement and then told to start making his own statement. But he just repeated what someone else said, and the court reporter took it down. Afterward he was returned to his cell where he remained until afternoon. He was then taken to another office, and in the presence of several witnesses was given the statement and told to sign it. He read the statement, which concerned a robbery (Windsor Theater) and the murder of a cashier,

and found it to be, in essence, the same statement he had made earlier in the morning. An officer called attention to some needed corrections which the petitioner was told to make, which he did by writing notations on the margin. He then signed the statement, admitting his part in the murder for which he was subsequently convicted.

Later that evening (January 4) he was questioned about a Crawford Theater robbery. This questioning lasted several hours, and during this session one of the officers punched him in the stomach a number of times. He wasn't bothered much on January 5, but the questioning and beatings resumed on January 6 until he confessed to the robbery.

The petitioner called as witnesses his former wife, his trial attorney, a codefendant in the murder case, and another acquaintance who was in police custody the same time as he.

The attorney said the petitioner showed marks of violent beatings when he first saw him. And his former wife also corroborated the marks of violence, as well as the threats to her relative to taking the baby.

His codefendant, Arthur LaFrana, testified that he first saw the petitioner at the station on the evening of January 3 or the early morning of January 4, at which time they were questioned together about the Windsor Theater robbery and murder. Thereafter, he saw the petitioner on January 6 or 7, and on this occasion observed police officers strike him. The other witness, Chester Skol, saw the petitioner on January 2, when they were both in custody. He told of seeing an officer strike the petitioner across the face and kick him in the shin. The witness did not see the petitioner after that until January 6 or 7, at which time the latter showed the scars on his hand and said he had to sign a confession or the police would have killed him.

For the State, the police officers who were accused by the petitioner categorically denied every type of mistreatment. The denials were full and complete and covered all

times and places concerned. In addition, they elaborated upon the treatment given the petitioner while he was in police custody and the circumstances surrounding his confessions.

We have here a direct conflict in the testimony, which the trial court resolved against the petitioner. Unless something appears to show this determination to be manifestly erroneous, the trial judge who had an opportunity to see and hear each witness should be upheld. (*People* v. *Viti*, 408 Ill. 206; *People* v. *Varela*, 405 Ill. 236.) And we must attach some significance to the fact that petitioner has made these same claims of coercion and extreme mistreatment before a court and a jury in his original trial at a time when the occurrence was fresh in the memory of everyone. On both occasions there was a finding that petitioner's contentions were not true.

It is undisputed that the petitioner was arrested without a warrant and held in various police stations illegally. But this of itself does not make his subsequent confession involuntary or inadmissible. *People* v. *Fox*, 319 Ill. 606; *People* v. *Viti*, 408 Ill. 206; *People* v. *Hall*, 413 Ill. 615.

As to the allegation regarding incompetency of counsel, the record shows that petitioner's counsel was of his own choosing—which presents no constitutional question. *People* v. *Vitale*, 3 Ill.2d 99; *People* v. *Heirens*, 4 Ill.2d 131. We are, therefore, not disposed to disturb the findings of the trial court, and, accordingly, its judgment is affirmed.

*Judgment affirmed.*