(No. 34352.—

HENRY NAPUE, Plaintiff in Error, *vs.* THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error.

*Opinion filed May 21, 1958.*

567

SCHAEFER, J., and DAVIS, C.J., dissenting.

GEORGE N. LEIGHTON, of Chicago, (MOORE, MING & LEIGHTON, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Henry Napue filed a petition in the criminal court of Cook County under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1957, chap. 38, pars. 826-832,) seeking to set aside a conviction for murder on the ground that it was obtained by the knowing use of perjured testimony. It is further alleged that oral admissions were made as a result of coercion during an illegal detention, and that the introduction of testimony concerning such admissions deprived him of due process. After a hearing on the petition the trial court denied relief. We have allowed a writ of error to review the record.

Petitioner contends his accomplice, who appeared as a witness against him, falsely testified that he had not been promised any consideration for his testimony, and that the prosecutor knew the statement to be false. Petitioner was convicted in 1940, after trial by jury, and was sentenced to imprisonment for a term of 199 years. The crime for which he was tried occurred on August 21, 1938, when a police officer was killed during the robbery of a Chicago cocktail lounge. There were five participants in the crime. One George Hamer was wounded in the shooting. He was apprehended and convicted of murder on a plea of guilty, receiving a sentence of 199 years. At petitioner's trial in 1940, Hamer was called as the principal witness on behalf of the State. On cross-examination he was asked whether anyone had promised him a reward for testifying, to which he replied that no one had promised him anything. Upon further questioning he admitted, however, that when he was interviewed in the penitentiary he said he would not testify unless he received some consideration for it, and that while he was waiting in the cell to be called at the trial some lawyer came to him and promised to do what he could. On re-direct examination the assistant State's Attorney asked: "Have I promised you that I would recommend any reduction of sentence to anybody?" Hamer replied: "You did not."

Several years after the petitioner's conviction the lawyer who had prosecuted the case, and who had since resigned from his position as assistant State's Attorney, filed a petition in the nature of a writ of error *coram nobis* on behalf of Hamer. Among other matters he alleged therein that at the time Hamer was sentenced he promised him that if he would co-operate with law-enforcing officials upon the trial of Napue when he was apprehended, a recommendation for a reduction of his sentence would be made and, if possible, effectuated. The former prosecuting attorney testified on behalf of the State at the present hearing. He

explained that in 1938 Hamer had insisted he was not a voluntary participant in the crime. He then told Hamer that if this were borne out when the other participants were apprehended, he would bring the matter to the attention of the proper authorities. Prior to testifying at Napue's trial, Hamer asked the assistant State's Attorney whether the latter would do what he had said, to which the assistant State's Attorney replied that he would keep his word and would direct the attention of the proper authorities to Hamer's case if he were satisfied that Hamer was telling the truth. Hamer was not called as a witness at the present post-conviction hearing.

Where a conviction is obtained by the presentation of testimony known by the prosecuting authorities to be perjured, the constitutional requirement of due process is not satisfied. (*Pyle* v. *Kansas*, 317 U.S. 213, 87 L. ed. 214; *Mooney* v. *Holohan*, 294 U.S. 103, 79 L. ed. 791.) To show a denial of due process within the meaning of this rule it is not necessary that the false testimony be concerned directly with the question of guilt. Even though it bears only upon the credibility of a witness, it may have the effect of depriving the accused of a fair trial. Whether such effect is present depends, of course, upon the circumstances of the particular case. In *People* v. *Savvides*, 1 N.Y.2d 554, 136 N.E.2d 853, the defendant was convicted in substantial part upon testimony given by an accomplice. Prior to the trial the assistant district attorney had reached an understanding with the accomplice, who had pleaded guilty, that upon the latter's "continued co-operation" the district attorney would permit him to withdraw his plea and to plead guilty to a lesser offense. Upon the defendant's trial the accomplice denied that he expected any consideration in return for his testimony; and the assistant District Attorney remained silent. It was held that the prosecutor's failure to expose the falsehood substantially prevented the defendant from having a fair trial, despite

the fact that it did not bear directly upon evidence of guilt. The court pointed out the danger that if an accomplice is promised leniency or other consideration in return for his testimony, he is likely to incriminate others to further his own interests, and that the jury's ability to weigh his testimony would be seriously impaired unless disclosure is made.

In the case at bar the evidence at the post-conviction hearing leaves little doubt that the prosecutor had promised Hamer if he would give testimony against Napue his co-operative actions would be brought to the attention of the appropriate authorities, to effectuate, if possible, a reduction in his sentence. This would be his reasonable understanding of the statements made by the prosecutor, and the State does not here deny that such a promise was made. Hamer's testimony to the effect that no promise had been given to him was clearly untrue, and had there been no disclosure of its falsity the petitioner's contention would raise a serious constitutional question. Subsequent testimony by Hamer revealed, however, that he had been reluctant to testify unless he received consideration for it, and that prior to the trial he was assured that efforts would be made on his behalf. Such disclosure was sufficient to apprise the jurors that he had some interest or motive in testifying, and enabled them to judge his other testimony in the light thereof. We think, therefore, that under the circumstances of this case the trial court was warranted in concluding there was no constitutional infirmity by virtue of the false statement.

As a further contention petitioner merely asserts that after his arrest he was held in custody from June 11, 1940, until June 17, 1940, without being taken before an examining magistrate; that he was continually questioned to induce a confession; and that "the record contains positive proof of illegal incarceration rendering any confession oral or written inadmissible." There is no further argument on the point. We have considered the contention, however,

and find it to be without merit. It does not appear that any confession made by Napue was in fact offered in evidence at his trial. Moreover, an illegal detention, while it may serve to corroborate other evidence of coercion, does not of itself render a confession or an admission involuntary. (*Davies* v. *People,* 10 Ill.2d 11; see, also, *People* v. *LaFrana,* 4 Ill.2d 261, 266.) The trial court was in a position to determine the credibility of the witnesses before it and to weigh their testimony. Nothing has been shown by petitioner to justify this court in setting aside its findings. The order of the criminal court is affirmed.

*Order affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

The opinion of the court holds that Hamer's testimony was false and that the prosecution knew that it was false. And the opinion also holds, in accord with *People* v. *Savvides,* 1 N.Y.2d 554, 136 N.E.2d 853, that due process can be violated by knowingly false testimony that goes to the credibility of a key witness as well as by that which goes directly to guilt or innocence. With these holdings I agree.

But the opinion goes further and says: "Subsequent testimony by Hamer revealed, however, that he had been reluctant to testify unless he received consideration for it, and that prior to the trial he was assured that efforts would be made in his behalf. Such disclosure was sufficient to apprise the jurors that he had some interest or motive in testifying, and enabled them to judge his other testimony in the light thereof." What is overlooked here is that Hamer clearly testified that no one had offered to help him except an unidentified lawyer from the public defender's office. The fact was, however, that the offer was not made by an unidentified assistant public defender, but by the assistant State's Attorney in charge of prosecuting the case.

The relevant parts of Hamer's cross-examination are these:

"Q. Did anybody give you a reward or promise you a reward for testifying?

A. There ain't nobody promised me anything.

\*    \*    \*

Q. Directing your attention to that time and place in Statesville, did you tell Mr. Steinberg [one of Napue's attorneys] that you were drunk that day?

A. No, I didn't.

Q. And didn't you tell him that you wouldn't testify in this case unless you got some consideration for it?

A. I would have told him anything to get him away. I didn't want to talk to him.

Q. Did you tell him what I told you?

A. Yes.

Q. You said you wouldn't testify unless you got some consideration?

A. Yes, I did; I told him that.

\*    \*    \*

Q. What are you sentenced for?

A. One hundred ninety-nine years.

Q. You hope to have that reduced, don't you?

A. Well, if anybody would help me or do anything for me, why certainly I would.

Q. Weren't you expecting that when you came here today?

A. There haven't no one told me anything, no more than the lawyer. The lawyer come in and talked to me a while ago and said he was going to do what he could.

Q. Which lawyer was that?

A. I don't know; it was a Public Defender. I don't see him in here.

Q. You mean he was from the Public Defender's office?

A. I imagine that is where he was from, I don't know.

Q. And he was the one who told you that?

A. Yes, he told me he was trying to get something did for me.

* * *

Q. Now, George, while you were at Statesville here, serving your term, about two months ago were you visited by some police officers?

A. Yes, some police officers came to see me.

Q. They came and asked you about this trial, didn't they, of Henry Napue?

A. Yes, they said something about it.

Q. They came to ask you if you would be willing to testify, didn't they?

A. Yes.

Q. And, of course, at that time you told them you would?

A. Yes.

Q. And you told them you would but you expected some consideration for it?

A. I asked them was there any chance of me getting any. The man told me he didn't know, that he couldn't promise me anything.

Q. Then you spoke to a lawyer today who said he would try to get your time cut?

A. That was this Public Defender. I don't even know his name. I could point him out, if I saw him.

Q. How do you know he is from the Public Defender's office?

A. I seen him once before when I was being tried.

Q. But you don't know he is from the Public Defender's office?

A. No, I don't know where he is from."

The opening questions and answers on Hamer's redirect examination were these:

"Q. Mr. Hamer, has Judge Prystalski [the trial judge] promised you any reduction of sentence?

A. No, sir.

Q. Have I promised that I would recommend any reduction of sentence to anybody?

A. You did not.

Q. Has any representative of the Parole Board been to see you and promised you a reduction of sentence?

A. No, Sir.

Q. Has any representative of the Governor of the State of Illinois promised you a reduction of sentence?

A. No, sir."

There is here an unmistakable effort to exclude all suggestion of a promise by anyone in a position to make the promise effective. Thereafter, the prosecutor who had asked these questions and elicited these answers filed a *coram nobis* petition on behalf of Hamer which alleged:

"Your petitioner  *  *  *, well knowing that identifications of Poe, Napue and Webb if and when apprehended would be of an unsatisfactory character and not the kind of evidence upon which a jury could be asked to inflict a proper, severe penalty, and being unable to determine in advance whether Poe, Napue and Webb would make confessions of their participation in the crime represented to Hamer that if he would be willing to cooperate with law enforcing officials upon the trial or trials of Poe, Napue and Webb when they were apprehended, that a recommendation for a reduction of his sentence would be made and, if possible, effectuated. Hamer at that time unhesitatingly expressed a complete willingness to cooperate at any time he would be called upon.  *  *  *

"Before testifying on behalf of the State and against Napue, Hamer expressed to your petitioner a reluctance to cooperate any further unless he were given definite assurance that a recommendation for reduction of his sentence would be made. Your petitioner  *  *  *  feeling that the interest of justice required Hamer's testimony, again assured Hamer that every possible effort would be made to conform to the promise previously made to him. Hamer took the witness stand and without equivocation proceeded to supply, in detail, under oath, all the testimony

which corroborated completely the confession made by Napue. Without Hamer's testimony a conviction of Napue upon his own uncorroborated confession may have been extremely doubtful."

The record shows that perjured testimony was knowingly used to bring about the judgment of conviction. I think that we should not affirm the judgment so obtained upon a speculation that the effort to mislead the jury might have failed. In my opinion both our own constitution and the Federal constitution require that this conviction be set aside.

Mr. CHIEF JUSTICE DAVIS joins in this dissenting opinion.