**UNITED STATES of America ex rel. Jerry McCHESNEY, Petitioner,**

v.

**Vincent R. MANCUSI, Superintendent of Attica Correctional Facility, Attica, N. Y., Respondent.**

**No. 72 Civ. 588.**

United States District Court,
S. D. New York.

Sept. 21, 1972.

Jerry McChesney, pro se.

Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, for respondent; Ilene J. Slater, Asst. Atty. Gen., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, Jerry McChesney, is one of three defendants who were convicted in 1961 of murder in the first degree in the former Court of General Sessions, New York County, New York State. In the instance of petitioner, the jury recommended life imprisonment and that sentence was imposed; he is presently confined at Attica Correctional Facility. Petitioner has never appealed from his conviction. No recommendation was made as to his codefendants, Hill and Catanzaro, and each was sentenced to death; the sentences were subsequently commuted to life imprisonment. Hill and Catanzaro appealed from their judgments of conviction, which were affirmed.[1] Thereafter, the Supreme Court granted Catanzaro's petition for certiorari and remanded to the state courts,[2] where a Huntley hearing[3] was held, which found Catanzaro's confession voluntary, with the final result that the New York State Court of Appeals again affirmed his conviction,[4] and the Supreme Court denied certiorari.[5]

The scene then shifted to the federal courts. Catanzaro and Hill, in separate habeas corpus proceedings, challenged their respective judgments of conviction upon various grounds, including perjury by Gibbs, one of the prosecution's chief witnesses. Catanzaro's petition was denied, whereas Hill's was sustained upon his claim that the denial of his motion for a severance, in view of the introduction in evidence of confessions by petitioner and Catanzaro, neither of whom testified, violated Hill's right to a fair trial and his right of confrontation under the Sixth Amendment.[6] Upon Catanzaro's appeal from the dismissal of his petition, the Court of Appeals, in affirming with respect to the claim of perjury by Gibbs concerning his military record and his undisclosed criminal record at the trial,[7] observed:

"Catanzaro's codefendant Hill raised the same issue in his petition for habeas corpus. After a full evidentiary hearing, the court concluded that whatever error might have been committed was 'insufficient in itself to warrant granting of the writ.'

. . . .

"There is nothing in the record to indicate that the district attorney consciously or intentionally used perjured testimony. . . . Nor is there anything in the record to indicate that the district attorney suppressed evidence of Gibbs' criminal record. . . . It was through the disclosure of the district attorney to the court that the defendants learned of Gibbs' perjury and of his undisclosed criminal record.

1. People v. Hill, 13 N.Y.2d 842, 242 N.Y.S. 2d 358, 192 N.E.2d 232 (1963).

2. Catanzaro v. New York, 378 U.S. 573, 84 S.Ct. 1931, 12 L.Ed.2d 1040 (1964).

3. See People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

4. People v. Hill, 17 N.Y.2d 185, 269 N.Y. S.2d 422, 216 N.E.2d 588 (1966).

5. Catanzaro v. New York, 385 U.S. 875, 87 S.Ct. 152, 17 L.Ed.2d 102 (1966).

6. United States ex rel. Hill v. Deegan, 268 F.Supp. 580 (S.D.N.Y.1967).

7. Subsequently, Catanzaro filed a new petition alleging that the prosecution knowingly permitted Gibbs to perjure himself. This court dismissed the petition upon the ground that it "adds no evidence of prosecutorial misconduct to that revealed at the hearing for petitioner's codefendant Hill." However, the Court of Appeals, on July 15, 1970, remanded "for an evidentiary hearing with reference to petitioner's claim that the State knowingly used perjured evidence at his trial . . . ." After considerable delay in bringing the matter on for a hearing, this court directed that petitioner proceed on September 6, 1972. On that day petitioner's counsel said he was not ready to proceed since Gibbs, whose testimony was deemed essential to support petitioner's claim, was unavailable and could not be located. The matter was adjourned to the following day to enable petitioner and his counsel to confer, and it was then stated again that petitioner could not proceed in view of Gibbs' absence, and accordingly the petition was dismissed without prejudice to renewal.

" . . . We conclude that there was no such 'transgress[ion] of the imperatives of fundamental justice' . . . ." [8]

After our Court of Appeals had affirmed the dismissal of Catanzaro's petition for a writ of habeas corpus, the petitioner herein applied in the New York Supreme Court for a writ of error coram nobis, alleging that (1) his conviction had been obtained as a result of Gibbs' perjurious testimony; (2) unconstitutional lineup identification procedures had been used, and (3) he was unlawfully deprived of his right to appeal through the action of his assigned counsel. His application for the writ was denied without a hearing in February 1970, affirmed upon appeal by the Appellate Division in June 1971,[9] and leave to appeal to the Court of Appeals denied. Petitioner then commenced the instant proceeding, contending that his constitutional rights to due process of law and equal protection were violated upon the same grounds as advanced in his state coram nobis application.

■ McChesney's first constitutional challenge parallels that heretofore made by his codefendants Catanzaro and Hill. He alleges that "the use of perjured testimony by the prosecution" deprived him of his right to a fair trial.[10] He fails to allege that the prosecution "knowingly" used such tainted evidence, but seeks to overcome this deficiency by a contention that the "doctrine of knowingly suppressing evidence includes a situation where the prosecution had the opportunity to uncover the perjury of its witness but failed to take advantage of such opportunity until after the jury has delivered its verdict." Petitioner's contention would require the prosecution to prepare the defense case as well as its own. Just as there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case," [11] a fortiori there is no requirement under the due process clause that it investigate the records or backgrounds of prosecution witnesses prior to offering their testimony.[12]

■■ The substance of petitioner's contention of alleged prosecutorial misconduct or negligence was urged before Judge Frankel,[13] who found that even assuming there was such a due process requirement as there urged, the facts did not warrant its application insofar as Hill's petition was predicated upon Gibbs' perjury and his undisclosed criminal record.[14] It is true that petitioner is not bound by the Hill proceeding. However, he makes no allegation of, much less offers any, evidential material of prosecutorial negligence in not uncovering Gibbs' perjury or his false background information beyond that previously presented to and passed upon by Judge Frankel, before whom there was a full exposure of all significant facts in an extended adversary hearing. This is not a case where the prosecution has in its files or is possessed of information of a material nature which it negligent-

8. United States *ex rel.* Catanzaro v. Mancusi, 404 F.2d 296, 300 (2d Cir. 1968).

9. People v. McChesney, 37 A.D.2d 679, 322 N.Y.S.2d 647 (1st Dep't 1971).

10. Petition, ¶ 7.

11. Moore v. Illinois, 408 U.S. 786, 795, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

12. *Cf.* United States *ex rel.* Hill v. Deegan, 268 F.Supp. 580, 591 (S.D.N.Y.1967), where Judge Frankel observed: "Assuming it might be desirable to have prosecutors investigate and disclose criminal records of their witnesses, the Fourteenth Amendment does not command that this be done."

13. The contention which Hill there made was that due process underlying such cases as Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Miller v. Pate, 386 U.S. 1, 86 S.Ct. 1935, 17 L.Ed. 2d 690 (1967), "may fairly be extended to apply to information reasonably available to the prosecution and not available to the defense—whether or not the prosecution bothers to obtain the evidence which is within its grasp." 268 F.Supp. at 590.

14. 268 F.Supp. at 592–593.

ly overlooks,[15] or where the prosecution, although not soliciting false evidence, allows it to go uncorrected when it appears.[16] Judge Frankel found that neither the prosecution nor anyone on his staff knew about Gibbs' criminal and military record before the jury returned its verdict and concluded that the case was "not one of deliberately suppressed or knowingly perjured evidence,"[17] a holding, as already noted, that was upheld by the Court of Appeals. As he so aptly put it: "The prosecution cannot be charged with 'suppressing' what it does not have."[18]

Finally, as the State points out, with Gibbs' testimony admissible against petitioner, as it was against Hill, as to whom the trial evidence "was slight,"[19] Gibbs' testimony was even more credible against McChesney, since there was independent corroboration as to his participation in the crime. McChesney, orally and in writing,[20] confessed to his role in the murder. He informed the police where in the East River he had thrown the gun used to shoot the decedent, and after the gun had been retrieved from the designated spot by a skin diver, McChesney identified it; the bullet that killed decedent was fired from a gun of this type. Lonergan, a codefendant, whose trial was severed from that of petitioner and the other codefendants, testified to petitioner's role in the conception and planning of the holdup. In sum, petitioner's first claim is without substance on a constitutional and factual basis.

Petitioner next contends that the police lineup procedure the day following his arrest,[21] when Gibbs identified him, as to which he testified upon the trial, was, under the applicable principle enunciated in *Stovall* v. *Denno*,[22] "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." The allegations under which petitioner seeks to come within this doctrine are sparse, unclear, and in any event do not support his claim[23]—they are merely conclusory without factual content. Little information is set forth as to how or in what respect the identification procedure was tainted so that his right to due process of law was violated.

■ ■ Petitioner alleges that at the police station Gibbs looked at several people (the record indicates there were eight or ten persons) in a room through a small window in a door, and that upon his trial Gibbs originally identified all three defendants, but later, on recross examination, testified that only two of the defendants, petitioner and Catanzaro, were in the room. The contradictory testimony, which was thoroughly probed into, was before the jury and by itself does not establish a due process violation.[24] With eight or ten persons

15. United States v. Consolidated Laundries Corp., 291 F.2d 563, 571 (2d Cir. 1961); United States v. Kyle, 266 F.2d 670 (2d Cir.), *cert. denied*, 361 U.S. 870, 80 S.Ct. 131, 4 L.Ed.2d 109 (1959).

16. *Cf.* Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Miller v. Pate, 386 U.S. 1, 86 S.Ct. 1935, 17 L.Ed.2d 690 (1967); United States *ex rel.* Meers v. Wilkens, 326 F.2d 135 (2d Cir. 1964); People v. Savvides, 1 N.Y.2d 554, 154 N.Y.S.2d 885, 136 N.E.2d 853 (1956). *See also* United States v. Keogh, 391 F.2d 138, 146 (2d Cir. 1968).

17. United States *ex rel.* Hill v. Deegan, 268 F.Supp. 580, 590 (S.D.N.Y.1967).

18. *Id.*

19. *Id.* at 597.

20. There were 2 written question and answer confessions; also, oral admissions to police officers.

21. The lineup antedated United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

22. 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

23. Petitioner, as to this claim, as well as to his others, makes statements in his memorandum of law that are not contained in his verified petition.

24. *Cf.* Kapatos v. United States, 432 F.2d 110, 113–14 (2d Cir. 1970), *cert. denied*, 401 U.S. 909, 91 S.Ct. 867, 27 L.Ed.2d 806 (1971); Parker v. United

in the room, there has been no showing, nor any basis for a claim that anything that occurred or was done at the station house identification was "unnecessarily"[25] or "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."[26] Gibbs, from his close position at the time of the holdup, had an opportunity for a clear observation of the holdup men and under the circumstances was motivated to carefully observe them. These factors and the short interval between the crime and the station house identification and the interval following to the in-court identification foreclose any claim that the totality of circumstances gave rise to a denial of due process of law.[27]

▪ Petitioner's final challenge to the judgment of conviction is based upon the fact that no appeal was taken therefrom. His petition alleges that "no notice of appeal was filed by relator's counsel, due to [his] lack of legal knowledge and formal education, he erroneously believed he would receive a new trial and no appeal was taken."[28] Petitioner was represented by experienced court-appointed counsel who represented him in the long and vigorously contested trial, and there is no suggestion, much less any evidentiary allegation that they were not competent. Petitioner does not allege that his attorneys failed to advise him of his right to appeal at state expense or that he was unaware of this right.[29] The State counters that petitioner intentionally and knowingly waived his right to appeal, based upon a letter which petitioner attached as Exhibit A to his state coram nobis petition, addressed to his four counsel, wherein he stated that after giving much thought to the matter and discussing it with his parents, he (1) did not want any motion made to set aside the verdict; (2) was satisfied with the verdict and wished the court to impose sentence (the jury had recommended life imprisonment only in his case); (3) did not wish any appeal to be taken, and that he knew his right to appeal would be lost unless taken within thirty days of sentencing; and (4) was "fully aware of the fact that the judge would probably set aside the verdict in view of what has developed as to the witness Gibbs, who identified me at the trial." Thus, this letter largely contradicts petitioner's present claim as to the appeal. However, he has submitted a reply affidavit which rather guardedly does not deny that he wrote the letter which he attached in support of his coram nobis application, but merely asserts "he did not make the affidavit in question regarding his right to appeal. . . ." There is no affidavit as to this matter and his reference is unclear. Significantly, the record contains a statement by his lead counsel made in the presence of petitioner and his three associate counsel giving some support to the contents of the letter. At the time of sentencing his lead counsel stated: " . . . I would like the record to indicate that all counsel for the defendant McChesney, after conferring with him and his parents, have been instructed not to make any motions with respect to the verdict of the jury."[30] Even more significantly, this statement was made after codefendant Hill's motion for a new trial had been denied;[31] the court made a similar

States, 404 F.2d 1193, 1198 (9th Cir.), *cert. denied*, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782 (1969).

25. Stovall v. Denno, 388 U.S. 293, 301, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

26. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

27. United States *es rel.* Springle v. Follette, 435 F.2d 1380 (2d Cir. 1970), cert. denied, 401 U.S. 980, 91 S.Ct. 1214, 28 L.

E.2d 331 (1971); United States *ex rel.* Phipps v. Follette, 428 F.2d 912 (2d Cir. 1970).

28. Petition, ¶ 5.

29. United States *ex rel.* Smith v. McMann, 417 F.2d 648, 655 (2d Cir. 1969) (en banc), *cert. denied*, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105 (1970).

30. Sentencing minutes, p. 8, Feb. 19, 1962.

31. Sentencing minutes, p. 6, Feb. 19, 1962.

disposition of Catanzaro's motion made at the end of the trial based on Gibbs' perjury.[32] Thus, with knowledge that those motions had been denied, petitioner's statement that the judge would "probably set aside the verdict" is contradicted by the record.

Under all the circumstances, petitioner's failure to submit an affidavit from any of his four attorneys either as to his right to appeal or as to alleged statements about a new trial, or to offer any explanation for the absence of such supporting affidavits,[33] requires rejection of his claim.

The petition is dismissed.

---

32. Sentencing minutes, pp. 10–11, Jan. 15, 1962. Catanzaro sought, contrary to the advice of his attorneys, to withdraw this motion, but the court denied it. Sentencing minutes, p. 6, Feb. 19, 1962.

33. United States *ex rel.* Roldan v. Follette, 450 F.2d 514, 517 (2d Cir. 1971); United States v. Welton, 439 F.2d 824, 826 (2d Cir.), *cert. denied*, 404 U.S. 859, 92 S.Ct. 157, 30 L.Ed.2d 102 (1971); *cf.* United States *ex rel.* Cummings v. McMann, 429 F.2d 1295 (2d Cir. 1970); United States *ex rel.* Rosen v. Follette, 409 F.2d 1042, 1044–1045 (2d Cir. 1969) (an banc), *cert. denied*, 398 U.S. 930, 90 S.Ct. 1822, 26 L.Ed.2d 93 (1970).