■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CRAIG CARTER, Appellant.—Judgment, Supreme Court, New York County, rendered January 14, 1972, convicting defendant after a jury trial of robbery in the first degree, grand larceny in the third degree and possession of a weapon, and sentencing defendant to concurrent indeterminate periods of imprisonment with maximums of five, three, and one year respectively, modified, on the law, by reversing the convictions for grand larceny and possession of a weapon and dismissing those counts of the indictment and as so modified the judgment is affirmed. Although we agree, to some extent, that certain comments by the prosecutor and the court were ill-advised and

unfortunate, nevertheless, we do not believe that reversible error was committed, or "that the totality of incidents * * * prevented the jury from making a determination on the evidence." *(People v Alicca,* 46 AD2d 322.) A review of the record indicates that the issues were fairly presented to the jury and that proof of guilt was conclusive. The complainant's identification of the defendant was clear and the circumstances under which complainant observed defendant at the time of the robbery were such as to negate any likelihood of mistaken identification. Additionally, the testimony of the defendant's accomplice tended to corroborate the complainant's testimony in substantial part. We note also, that the testimony of the major defense witness was inconsistent and indeed, that testimony itself cast doubt on the defense's version of the facts. Although we find that the evidence established guilt beyond a reasonable doubt and that there were no errors or defects affecting the substantial rights of the defendant (CPL 470.05, subd 1), a modification of the judgment is required to dismiss the counts of grand larceny in the third degree and possession of a weapon, since they are inclusory concurrent counts of the crime of robbery in the first degree *(People v Pyles,* 44 AD2d 784). Concur—Kupferman, Tilzer and Lane, JJ.; Stevens, P. J., and Capozzoli, J., dissent in the following memorandum by Capozzoli, J.: Capozzoli, J. (dissenting). This perfectly simple robbery case was completely turned into a complex situation for which there was no reason whatever. The unnecessary, improper comments of the prosecutor, during the summation, to which proper objection was made and improperly overruled by the trial court; the court's questioning of witnesses to a greater extent than ordinarily expected from a Trial Justice, in fact to the point of displaying inappropriate skepticism and doubt as to the story of the witness, Fortson, relating to his testimony of walking a girl to a subway; the court's statement to the deadlocked jury that "this jury will stay in session— incommunicado, if you know what that means", and other errors disclosed by the record, deprived defendant of a fair trial. The remark of the court that the jury would stay in session incommunicado was especially harmful, because, just a very short time before that statement, the court had said to the jury: "It is the intention of this Court to keep this jury in session for as long as it may take to arrive at a verdict". All of this took place after the jury had reported that it had reached a guilty verdict, but, on polling the jury at the request of the defendant's counsel, the jury foreman said that it was not his verdict. Necessarily the court was compelled to send the jury back to continue its deliberations, but, before doing so, it made the remark already referred to above. Bearing in mind that there was only one juror who did not vote for a guilty verdict, it is difficult to conclude that the language used by the court had no effect upon that juror's independence of mind, especially so when all the other jurors might well have blamed him for the further detention of the jury. It is difficult to excuse the court's language as an unfortunate choice of words, as the feeling persists that the jury could have regarded this as coercive. Also, attention should be called to the examination by the prosecutor of the witness, Wells, who had been called as a People's witness and who was not answering the questions of the prosecutor as expected. At that point the court addressed the prosecutor as follows: "You may ask him Mr. [prosecutor] whether that is what he told you previously, whether he told you something else". Following the court's statement, the prosecutor then proceeded to examine the witness concerning a previous discussion between himself and the witness and what the latter told the former as to what he was to testify to. This was a clear violation of CPL 60.35 (subd 1), which states: "When, upon examination by the party

who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony". It is to be noted that the question suggested by the court to the prosecutor, which was put to the witness, Wells, did not refer to a prior *written statement,* nor to *an oral statement under oath.* Hence, it was improper. *(People v Loschiavo,* 40 AD2d 755.) It is argued by the People that whatever improper comment was made by the prosecutor in summation was prompted by the prior statements of defendant's counsel, made during the trial, and, hence, for that reason, should be excused. The following statement by the prosecutor was made when he started his summation: "And, let me tell you this right now, for thirty years in which he [Frank Hogan] has been District Attorney no assistant has dared soil his name. And there are hundreds, maybe thousands no one has ever brought shame on this office. I do not intend to be the first, I assure you I will not be. I will assure you that my conduct in this trial has been within the law." On completion of this quoted statement, defendant's counsel objected as follows: "I will object to that your Honor. Self-serving." "THE COURT: Indeed, it may be but the conduct of Mr. [prosecutor] has been brought into question in this case. I will permit him to depart from strict comment, solely with respect to that limited aspect". It must be emphasized that one of the main witnesses, Bray, a four time convicted robber, was a participant in the crime charged against this defendant and he was called as a witness for the People. It was to be expected that the defendant's counsel would seek to attack this witness' credibility by trying to ascertain if any promises had been made to this witness in return for his testimony. That was a proper subject for the jury's consideration, and it was especially improper for the prosecutor, in his summation, to say: "There was no pre-arranged deal. Do any of you doubt that." Again the prosecutor said: "Do you think I am going to go into a deal, do you think I am going to do that. Of course I didn't." Prompt objection was made to that statement. It would seem to me that that objection should have been sustained, without any doubt whatever. However, acting on the objection, the record shows that the court said in part: "The jury was asked to draw certain inferences as to the probability that some kind of a sordid deal had been entered into, and under those circumstances I will allow the district attorney to ask the jury to draw". Surely it was wrong for the prosecutor to make himself a conveyor of information to the jury by putting his personal assurance behind that information. It has been held, time and again, and no citation is required, that a prosecutor should never inject himself, or his integrity, or that of the office he represents, into the case so as to appeal to the jury on the basis of his personal reputation or position. "A prosecutor's performance, aimed at justice and not a conviction, must reflect self-discipline". *(People v Petrucelli,* 44 AD2d 58, 59.) One further comment is in order. The witness, Bray, during the presentation of the People's case, testified that only three persons were involved in this robbery, including himself. Yet, after the People rested their case, he changed his story and said there was another person involved, thus indicating that he did not tell the truth when he said there were only three. He identified the witness, Fortson, who testified for the defendant as having also participated in the robbery. Why did he say that there were only three involved in the robbery when, in fact, there were four? Why did he withhold this information from the court in his original testimony? All in all, this record is most unsatisfactory and leaves much to

be desired and I am forced to the conclusion that the defendant was not afforded a fair trial and that a new trial should be ordered. I cannot subscribe to the theory that, whatever improprieties there were, should be overlooked on the theory of harmless error. In *People v De Martino* (252 App Div 476, 480), the court said: "It has been said that, however strong may be the evidence against a defendant, a judgment of conviction should be reversed if the trial was not a fair one." In *People v Savvides,* 1 NY2d 554, 556–557, the court said: "The conviction cannot stand. The administration of justice must not only be above reproach, it must also be beyond the suspicion of reproach. * * * Nor does it avail respondent to contend that defendant's guilt was clearly established". Therefore, I dissent from the conclusion reached by the majority, vote to reverse and order a new trial.