■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EFRAIN OLMO, Appellant.—Appeal from a judgment of the Supreme Court, Bronx County (Ivan Warner, J.), rendered January 30, 1985, which convicted defendant, after a jury trial, of robbery in the first and second degrees and burglary in the first and second degrees, held in abeyance, and the matter remanded for a new *Wade* hearing.

One week after defendant-appellant's appeal was heard by this court on March 17, 1988, he moved for leave to file a *pro se* supplemental brief. The motion was granted, and one year later defendant filed his supplemental brief which raises four points for this court's review.

Defendant contends that he was deprived of due process by the prosecutor's knowing use of perjured testimony at the *Wade* hearing and at trial. In support of his contention, defendant submits a transcript of a *Wade* hearing held on February 15, 1985, in another robbery case pending against him which had been severed pursuant to his motion. In the first case, from which the instant appeal arises, it was alleged that the defendant and an armed companion had forced their way into the home of Roggiello Rodriguez in late October 1983. The two men forced Rodriguez and his 15-year-old son, John, to lie on the floor while they ransacked the apartment. Before fleeing, they locked the man and the boy in a closet.

Rodriguez gave a general description of the shorter of the two perpetrators, alleged to be the defendant, to the police following the robbery. The next day, the two victims were shown an array of photos by the police. The father picked out the "taller" of the two perpetrators and the son chose a photo of the defendant.

Several weeks later, on December 13, 1983, the Rodriguezes separately viewed a lineup and each chose the defendant. That same day, the complainant in the second robbery case, Paulette McCoy, also selected the defendant from the lineup.

At both the *Wade* hearing and at trial, Police Officers Jay Bonan and Theodore Young testified that the Rodriguezes were brought to the station house by Officer Young, and that Officer Bonan picked up Ms. McCoy separately and brought her to see the lineup. However, Ms. McCoy testified at the *Wade* hearing for the case based on her complaint that she was taken in the same police car with the Rodriguezes to view the lineup, and that both Officers Bonan and Young were present in the car. At trial, the older Rodriguez also said that Officers Bonan and Young were in the police car which took him to the precinct to see the lineup. Although neither John Rodriguez nor his father mentioned Ms. McCoy as being present in the police car or at the precinct, Ms. McCoy unequivocally testified that while in the car, she and the Rodriguezes exchanged information about what had happened to them and that she agreed with their description of the perpetrator.

This sworn testimony by a witness in an unrelated case, with no motive to fabricate, casts doubt on the credibility of the police witnesses who testified in the case now before us. It also raises an issue as to the prosecutor's scienter inasmuch as the same Assistant District Attorney prosecuted both cases. Moreover, Ms. McCoy's testimony came only two months after the trial in this case began and only two weeks after the defendant had been sentenced. We do not think the prosecutor's duty to the court and the criminal justice system ended upon the defendant's sentencing. "A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth." *(People v Savvides,* 1 NY2d 554, 557 [1956].) Given that identification was the central issue in this case, and that Ms. McCoy's testimony undermines the validity of the out-of-court identification of the defendant, the matter must be remanded for full

examination at a new *Wade* hearing. Concur—Murphy, P. J., Carro, Milonas and Rosenberger, JJ.