CHERRY, J., concurring in part and dissenting in part:
I concur in the majority's decision that when postconviction counsel is appointed pursuant to NRS 34.820, a challenge to that counsel's representation becomes available upon the conclusion of the first postconviction proceeding. I further agree with the majority's adoption of the two-prong test in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to evaluate claims of ineffective assistance of postconviction counsel. However, I disagree with the majority's decision that a petition raising a claim of ineffective assistance of first postconviction counsel is filed within a reasonable time if it is filed within one year after entry of the district court's order disposing of the prior petition or, if a timely appeal is taken from the district court's order, within one year after our issuance of remittitur. I would hold that the reasonableness of any delay should be assessed on a case-by-case basis considering the totality of the circumstances, which may justify a delay of more than one year.
Turning to Rippo's claims, I agree with Justice Pickering as to the judicial-bias claim. But, unlike my colleagues, I also believe that Rippo showed that he is entitled to an evidentiary hearing on his claims that postconviction counsel was ineffective for not raising a claim of prosecutorial misconduct and an ineffective-assistance claim based on trial counsel's failure to present additional mitigation evidence. Therefore, I would reverse and remand this matter to the district court for an evidentiary hearing on these two claims as well.
Rippo complains that postconviction counsel was ineffective in failing to investigate and present evidence that the State knowingly presented perjured testimony at trial. Two of the State's witnesses, David Levine and James Ison, have provided declarations stating that the police provided details about the murders that Rippo had not disclosed to them. The majority acknowledges that the statements in the declarations could have been used to impeach Levine and Ison but concludes that this was not enough to make a difference. In my view, an evidentiary hearing is necessary before that determination can be made. While Levine and Ison did not recant their testimony that Rippo admitted his involvement in the murders, their statements certainly impeached aspects of their testimony and, perhaps more importantly, raise serious concerns about prosecutorial misconduct. See People v. Savvides, 1 N.Y.2d 554, 154 N.Y.S.2d 885, 136 N.E.2d 853, 854 (1956) ("It is of no consequence that the falsehood bore upon the witness'[s] credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth."). The implications of the matters raised in the declarations deserve closer examination that an evidentiary hearing will provide.
Rippo also contends that postconviction counsel was ineffective for not challenging trial counsel's failure to present mitigating evidence of the abuse he suffered at the hands of his stepfather, James Anzini, and his neuropsychological impairment. The new *1115 evidence paints a picture of emotional and physical abuse to which the jury was not privy. Anzini played games with Rippo and his siblings for the sole purpose of belittling and harassing them. Anzini scared the children by pretending that he was going to drive the car they were riding in over a cliff. He hit Rippo and his siblings with books and bamboo sticks. Anzini treated Rippo worse than any of his children or stepchildren. On one occasion, after Rippo suffered a beating from a neighbor boy, Anzini ordered him to "go back and finish the job." Rippo returned to fight the boy and was badly hurt. In another incident, Anzini flew into a rage when Rippo accidently broke an inexpensive household item. Anzini punished Rippo for minor infractions by confining him to his room for hours without access to a bathroom and then beating him when he wet his pants. While the family was living in Moab, Utah, Anzini punished Rippo by making him stand outside when the temperature was over 100 degrees. Rippo's mother, Carole Anzini, also contributed to his troubled childhood. She was neglectful in her care of him, and when he was seven years old, she took Rippo and his siblings from their home in New York without permission from the children's father, Domiano Campanelli. Campanelli knew nothing about his children's whereabouts until ten years later. The new mitigation evidence strongly suggests that Campanelli was a kind and caring father who loved his children very much. Because of Carole's actions, Rippo was robbed of a loving relationship with his father for a decade.
In addition, Rippo provided an evaluation from psychologist Jonathan Mack. Dr. Mack concluded that Rippo suffers from Attention Deficit Hyperactivity Disorder, which, along with his unstable upbringing, contributed to his early drug use. Further, Rippo sustained significant psychosocial trauma during his childhood, which caused "a chronic free floating anxiety which led to the development of his obsessive-compulsive and drug addictive tendencies" as a means of controlling his anxiety. Dr. Mack observed that Rippo's overall neurological and psychological assessment reveals that he has significant problems with attention, impulse control, and short-term memory that could have been identified by competent neurological testing prior to trial.
The mitigation evidence presented at trial did little in the way of providing the jury any insight into Rippo's character, background, and conduct. Had the new mitigation evidence been presented, it could have provided that insight and swayed the jury to choose imprisonment rather than death. See Penry v. Lynaugh, 492 U.S. 302, 328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ("Rather than creating the risk of an unguided emotional response, full consideration of evidence that mitigates against the death penalty is essential if the jury is to give a reasoned moral response to the defendant's background, character, and crime." (citations and internal quotation marks omitted) ), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) ; Douglas v. Woodford , 316 F.3d 1079, 1090 (9th Cir. 2003) ("Evidence regarding social background and mental health is significant, as there is a 'belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional and mental problems, may be less culpable than defendants who have no such excuse.' " (quoting Boyde v. California, 494 U.S. 370, 382, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) ) ); Jesse Chang, Frontloading Mitigation: The "Legal" and the "Human" in Death Penalty Cases, 35 Law & Soc. Inquiry 39, 46 (2010) ("The purpose of mitigating evidence is to provide the jury with a basis for sentencing the individual defendant to life imprisonment rather than to death.... The challenge facing defense counsel is to present mitigating evidence that explains the defendant's commission of the crime. This requires providing the jury with an empathy provoking way of understanding the defendant and his conduct."). While the majority casually dismisses this new mitigation evidence, concluding that it would not have made a difference, Rippo has produced sufficient support entitling him to an evidentiary hearing to prove his allegations that postconviction counsel provided ineffective assistance by failing to investigate and challenge trial counsel's performance in the presentation of mitigating circumstances.
*1116 Should he be successful, he may secure a new penalty hearing. Justice demands that he receive that opportunity.