Floyd GRAHAM, Jr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15150.

Court of Criminal Appeals of Oklahoma.

Oct. 1, 1969.

Ward, Brown & Perrault, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., W. Howard O'Bryan, Jr., Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Floyd Graham, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the Superior Court of Okmul-gee County with the crime of Larceny of Domestic Animals, After Former Conviction of a Felony, was sentenced to serve ten years imprisonment in the state penitentiary, and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the facts adduced on the trial reveal that Custer McFall testified as to the location of his farm and that on October 1, 1967, he discovered one red cow and one muley roan cow missing. He reported this to the Sheriff's office and identified them by description, brand and eartag number, and further stated that he had given no one permission to taken them. He testified that around March 7, 1968, he located the missing cows on Mr. Graham's pasture. He identified the eartags and testified that Mr. Graham gave him one of the tags and explained that he found the tag when cleaning out his truck.

Dan Stout testified that at the time in question he was Sheriff of Okmulgee County and that he was able to recover the stolen cows on land either owned or leased by the defendant; that the defendant explained he had gotten the cows at Drew Donathan's sale barn; however, when Mr. McFall walked up to one of the cows and petted her, the defendant stated, "Them's sure your cows, them's sure your cows." He then arrested the defendant.

R. D. Turner, Deputy Sheriff of McIntosh County testified that he was also present when the cows were found in the pasture of the defendant and related that the defendant stated he had bought the cows from Drew Donathan.

Ellis Holly testified that he was Sheriff of Okmulgee County; that when the defendant was arrested he made the statement that he had traded the cows from a man by the name of Roy Crandall of Henryetta. The defendant later told him he bought them through the sale barn from Drew Donathan's sale at Henryetta.

Both Roy Crandall and Drew Donathan then testified that they did not sell or trade any cows in question to the defendant.

Samuel Broadus testified for the defendant and stated that he saw the defendant buy two cows; however, on cross-examination he was unable to describe the cows purchased with any degree of certainty.

Virginia Owens then testified that she saw the defendant purchase a red and white cow and a red cow, on October 14, 1967, and identified them as the two cows in question. She further testified that she was not paying close attention at the time of the sale and could not tell whether they were branded or tagged, as she was some distance from the cattle at the time of the sale.

Drew Donathan was recalled and testified that on October 14, 1967, the defendant bought two cows—grey brahma heifers—and he sold them the same day.

■ It is first contended on appeal that the evidence is wholly insufficient to support the verdict of the jury. From the foregoing recital of facts it is readily apparent that evidence adduced by the State, although circumstantial, was in sharp conflict with the testimony offered in behalf of the defense and that the totality of the evidence established that the theft of the cattle was discovered on October 1, 1967, and that they were in the possession of the defendant on October 14, 1967 until they were recovered on March 7, 1968; that the defendant had transported said cattle was established by the circumstance of his turning over to the owner the eartag which he stated had been found in the bed of his truck. The defendant's conflicting statements as to how he gained possession of said cattle and the testimony of his witnesses offered to establish this question was sharply disputed by the State witnesses and presented a question of fact for the determination of the jury. We are of the opinion that this assignment of error is without merit, for as we said in Music v. State, Okl.Cr., 396 P.2d 894:

"Where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts."

■ Defendant also contends that the trial court erred in failing to instruct the jury on good time credits, as required by 57 O.S. § 138. We observe, in this connection, that such instruction was not requested by the defendant, nor does he establish how the failure to give such instruction was injurious to the defendant. From our examination of the instructions we fail to see how the defendant could have been injured by the failure of the trial court to give such instruction. We have repeatedly held that in order to justify a modification or reversal for the trial court's failure to give an instruction, it must appear that the defendant was prejudiced thereby.

■■ This leads us to a consideration of defendant's contention that "the court erred in admitting evidence of the Plaintiff in Error's former conviction of felonies where the records show on their face that the Plaintiff in Error was not represented by counsel at the time these convictions were had." The defendant relies on Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed. 2d 319 (1967). Defendant correctly contends that the record fails to establish that he had been advised of his right to counsel and had affirmatively waived the same, or that he had been represented by counsel on his previous convictions as required in Burgett v. Texas, supra. However, the introduction of the prior convictions came in the second stage of a two-stage proceeding, after the jury had determined the defendant's guilt of the primary charge and could not have affected this determination. Since the former convictions were considered by the jury in determining the punishment to be assessed, we are of the opinion that the erroneous admission of these former convictions requires, in the interest of justice, that the

judgment and sentence be modified from a term of ten years imprisonment in the state penitentiary, to a term of five years imprisonment in the state penitentiary, and as so modified, the judgment and sentence appealed from is affirmed.[1] Judgment and sentence modified, and as so modified, affirmed.

BRETT, P. J., and NIX J., concur.

---

1. Where the judgment and sentence of former convictions fail to reflect whether the defendant was represented by counsel or effectively waived the right to such representation, the District Attorney should secure a duly authenticated record of the court's minutes, establishing this fact, and attach the same to the duly authenticated copy of the judgment and sentence.