O. J. "Buck" MARUTZKY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-16206.

Court of Criminal Appeals of Oklahoma.

Feb. 23, 1972.

Rehearing Denied May 8, 1972.

W. B. Ward, Jr., Ada, for plaintiff in error.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for defendant in error.

## OPINION

SIMMS, Judge:

Defendant was convicted in the District Court of Carter County, Oklahoma, of the

crime of Larceny of Domestic Animals, After Former Conviction of a Felony, in a two-stage proceeding before a jury and sentenced to serve a term of ten years in accordance with the jury verdict. He has perfected a timely appeal to this Court.

The sole and only assignment of error presented in defendant's brief is that the evidence adduced at trial was insufficient to sustain the conviction and the trial court erred in not advising the jury to return a verdict of acquittal.

Evidence of the state at trial pertaining to defendant's complicity in the larceny of the animals was wholly circumstantial in nature, therefore, a brief review of same is necessary to arrive at a proper conclusion in this appeal.

As its first witness, the prosecution called Glenn Cantrell, who testified he was a farmer and rancher near the community of Lone Grove, and he had leased 240 acres of land adjacent to land occupied by the defendant for grazing and pasture purposes. Cantrell testified that during the months of June and July, 1968, he had fifty-four cows and twenty-one calves pastured on the leased land, and that each bore the "C bar" brand. It should be noted that the "C bar" brand appears from photographs introduced at trial and contained in the record, as follows: [ C — ].

About the 1st of August, 1968, Cantrell discovered six cows and four calves were missing. He subsequently notified the Sheriff of Carter County and asked the aid of the Sheriff in locating the missing animals.

Cantrell related that in January, 1969, he went to a Jack Hudman's place in Cotton County and made identification of one of his missing cows. Cantrell's testimony and photos introduced at trial indicated that the "C bar" brand had been changed to an "O". The photo gave this appearance: [ (⅂) ], the "O" being open at both top and bottom, with the bar or slash being still clearly visible.

On February 21, 1969, Cantrell related he, together with the Carter County Sheriff and District Attorney went to a Mr. Harrison's place in Comanche County, where he identified another of his missing cows which had a "C bar" brand on its left shoulder and hip, and which also had an underslit "7" out of its right ear.

Robert Witcher Jones, an admitted convicted felon and present inmate of the state penitentiary testified for the state that he knew defendant and defendant's father, Oliver Marutzky, and saw them together on or about August 10, 1968. On that date, Jones, defendant, and defendant's father, met at Jones' hog pen by prior arrangement, where they branded some cattle loaded on Oliver Marutzky's GMC truck, by using an "O" brand over the brands the cows had, which was a "C bar" brand. Jones also testified the truck was loaded with six cows and four calves.

Jones further testified that he had an agreement with the two Marutzkys to keep the cattle at Jones' place until they could be sold and that he heard the defendant trying to sell the cattle to his father.

He stated that on November 6, 1968, the cattle were loaded onto Oliver Marutzky's truck, together with some cattle Oliver owned, to be taken to Comanche for sale. Two days later, Oliver gave Jones a check for Two Hundred Eleven Dollars and Fifty Cents ($211.50) as Jones' share of the profits for keeping the cattle and Oliver displayed a sales slip for the sale of cattle from Cattlemen's Stockyards in Comanche.

The defendant later showed the witness where he had loaded the stolen cattle, which location, according to Jones' testimony was adjacent to the property leased by Cantrell.

Betty Wood, who was on November 6, 1968, bookkeeper for sales at Cattlemen's Stockyards, identified a copy of a sales slip showing Oliver Marutzky had sold cattle at Cattlemen's on the 6th of November, and that two of the purchasers of part of the lot were Charlie Hix from Apache, and Johnny Schrader from Frederick.

Grace Simmons, an employee of Cattlemen's identified a check written to Oliver Marutzky for payment of the cattle sold by

him on November 6th, and testified she gave Oliver the check. The check was introduced into evidence.

Charlie Hix testified that on November 6th, 1968, he bought a cow at Cattlemen's for Walter Harrison, who lives east of Lawton.

Walter Harrison testified that he had Hix buy the cow for him and went to Comanche to get the cow and take it to his place.

Carter County Sheriff Harold Rudd testified that he went to Walter Harrison's place with Cantrell where Cantrell picked out one of the missing cows. The cow was run into a chute, the brand clipped and examined. Sheriff Rudd testified the brand had "originally been a 'C' with a little bar in it. And it had had an 'O' run over this old brand but it lacked some of the top coming together." (Tr. 97)

Johnny Schrader testified he was in the cattle buying business and on November 6, 1968, he purchased a cow at Comanche for a Jack Hudman and personally delivered the cow to Hudman.

Jack Hudman, a farmer living in Cotton County west of Walters, testified Johnny Schrader delivered a cow to his place in the evening of November 6, 1968.

It is to be noted that Hudman identified a photograph of a cow as depicting the one brought to his place by Schrader. Cantrell, while on the stand, identified the same photograph as depicting one of his missing cows.

Defendant testified in his own behalf, denied that he had ever been to Jones' place with cattle and denied stealing the cattle. Defendant did admit the prior conviction contained on page two of the information. One character witness was called for the defendant.

No objections were taken to any instruction, however, this Court has carefully examined the instructions of the trial court and they are in all respects, correct.

Defendant relies upon Jackson v. State, Okl.Cr., 403 P.2d 518 (1965); Cook v. State, 71 Okl.Cr. 65, 108 P.2d 184 (1940); and, Gray v. State, 66 Okl.Cr. 211, 90 P.2d 686 (1939), to support his assertion of error. *Jackson,* supra, was a burglary case where there was absolutely no evidence to connect the defendant with the commission of the burglary and this Court properly vacated a conviction based upon "speculation". *Jackson* is not applicable to this case.

*Cook,* supra, involved a conviction of larceny of cattle, however is clearly distinguishable from the instant case by reason of the following language found in Cook:

"The verdict of the jury in this case can only be surmised by reason of the fact that one of these defendants had several years prior to this trial plead guilty to stealing chickens in the State of Kansas, and the other defendant was very drunk at the time of the alleged commission of this offense. There was no evidence to show the defendants in possession of the stolen cattle, no evidence of their being hauled away by defendants, and no evidence to show they were ever sold. The evidence only reveals that they had been lost from the range and were never found."

*Gray,* supra, involved the alleged larceny of domestic fowls. The prosecution failed to connect Gray in any manner with the stolen turkey or to place him on the premises of the owner of the bird. Gray gave a satisfactory, corroborated story as to his whereabouts at the time of the larceny of the turkey. This Court properly held that such a conviction was improper because it would be based "upon conjecture, speculation, and guess."

The evidence in the instant case puts the stolen cattle in co-possession of the defendant. The evidence of the state, if believed by the jury, has defendant attempting to sell the stolen animals to his father, and

defendant pointing out to a witness where he, the defendant, loaded the cattle.

We feel Graham v. State, Okl.Cr., 462 P.2d 309 (1969) is fully controlling in this case. *Graham,* supra, involved a conviction for larceny of domestic animals after former conviction of a felony, where the state's evidence was wholly circumstantial. In *Graham,* defendant was, according to the evidence, seen in possession of the stolen cattle, offered to investigating authorities an explanation for having them in his possession, which explanation was disproved by witnesses at the trial. This Court affirmed the conviction, noting the state's case was entirely circumstantial. It was stated in Syllabus One of *Graham,* supra:

"Where there is competent evidence in the record from which the jury could reasonably conclude the defendant was guilty as charged, Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts."

Also, in Ryans v. State, Okl.Cr., 420 P.2d 556 (1966), Judge Brett wrote:

"Before the Court of Criminal Appeals will interfere with verdict of jury on ground that evidence was insufficient to sustain conviction, *there must be no competent evidence in the record upon which the verdict could be based.*" (emphasis added)

In conclusion, we find the evidence, although circumstantial in nature, sufficient to submit the issue of defendant's guilt or innocence to the jury, and the trial court properly overruled defendant's motion for an advisory verdict of acquittal.

The judgment and sentence of the trial court is, therefore, affirmed.

BUSSEY, P. J., and BRETT, J., concur.