O. J. "Buck" MARUTZKY, Appellant.

v.

The STATE of Oklahoma, Appellee.

No. A–17847.

Court of Criminal Appeals of Oklahoma.

June 20, 1973.

Wallace, Bickford & Pasley, Ardmore, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., John C. Williams, Legal Intern, for appellee.

OPINION

BLISS, Presiding Judge:

In the District Court of Carter County, Case No. CRF–69–40, appellant, O. J. "Buck" Marutzky, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Larceny of Domestic Animals, After a Former Conviction of a Felony. His punishment was fixed at ten (10) years imprisonment and from that judgment and sentence, he perfected an appeal to this Court, Marutzky v. State, Okl.Cr., 496 P.2d 804 (1972). On May 16, 1972, defendant filed his application for Post-Conviction Relief in this same Court. On September 28, defendant's application for Post-Conviction Relief was set for evidentiary hearing before the Honorable Bob Powell, evidence was presented, and on September 29, 1972, the District Court denied post-conviction relief. From the District Court's denial of post-conviction relief, defendant has perfected a timely appeal to this Court.

█ In defendant's post-conviction application, he asserts his conviction was founded upon perjured testimony. The thrust of this contention is supported by the allegation the witness Robert Witcher Jones, a witness who pled guilty to a collateral offense, and apparently material to defendant's case, agreed to plead guilty to a six year term in exchange for his testimony as a State's witness at defendant's trial. At defendant's trial on cross-examination, defendant alleges Jones denied any special consideration upon his plea of guilty for his testimony. He further alleges the prosecutor, standing mute upon Jones' denial of special consideration, did not adequately present to the jury a pertinent fact necessary in the determination of Jones' credibility. As we have clarified the issue before us, a summary of the evidence received at the hearing on the post-conviction application is in order.

At the hearing, seven inmates of the Oklahoma State Penitentiary testified on behalf of the defendant. Their testimony revealed that they either personally talked with Jones or overheard conversations between Jones and others, the substance of which involved Jones' statements revealing defendant was not guilty for the instant offense, but that he was responsible for the larceny of the livestock. Further, their testimony revealed Jones maintained a personal vendetta against defendant as defendant had previously forced Jones to pay a bogus check. Finally, they testified they learned Jones turned State's evidence in exchange for a lenient six (6) year sentence on a plea of guilty.

Mr. Burke Mordy, District Attorney of the 20th Judicial District, testified that he had several conversations with Jones in regard to testifying as a State's witness in the instant case. Mordy testified he told Jones that upon his entry of a plea of guilty for an offense pending against him, he would recommend the court defer sentencing for sixty (60) days. Apparently the court followed Mordy's recommendation. Further, it was stipulated that if Jones did not become involved in any trouble in that period and if his presentence report was favorable, he would recommend to the Court a six (6) year sentence for the offense with which he was charged. However, Jones apparently had written several bad checks during the period in which sentencing was deferred and at the time of sentencing, the assistant district attorney recommended, and Jones was sentenced, to eight (8) years imprisonment for the above offense. Mordy's testimony basically revealed no firm promises had ever been given Jones in exchange for his testimony. Basically, this evidence revealed the district attorney and Jones were both in the process of negotiating upon his plea of guilty on a collateral offense.

Defense counsel contends the instant case falls within the general rule recited in Hurt v. State, Okl.Cr., 312 P.2d 169 (1957) which states as follows:

"Where a co-defendant in a case confesses and agrees to testify for the State, if such was induced by a promise of lenient treatment by the prosecution and

thereafter said co-defendant does testify but denies that he has been promised leniency by the State, and the county attorney stands silent, knowing the statement to be false, and does not correct the statement, such would constitute error so fundamental and substantial that the verdict of guilt would not be permitted to stand."

In construing the above rule in *Hurt,* supra, this Court further stated as follows:

"As much as we condemn the careless and ill-advised statements to the jury by the prosecutors, this would not entitle defendant to a new trial unless the county attorney had in the face of such statements induced York and Burns, one or both, to turn State's evidence by reason of promising them aid. As indicated in People v. Savvides, supra, there is a vast difference in a witness turning State's evidence in the hope of leniency, and where he had been promised leniency, and when the question was raised deceived the jury. In Savvides the prosecuting attorney had in court admitted that he had made a deal, but stood mute when the witness denied it before a jury. The facts were admitted. Here County Attorney Scanland swears that he made no promises. As to Burns, he is corroborated by John Connolly, Esq., Burns' attorney. And as to York, York was already convicted. York, who admits to perjury and whose history as shown by the trial record is anything but good, says that he was promised help on his appeal. Whether the help attempted by the County Attorney's office was in gratefulness for the co-operation of York in the two trials or by reason of a promise, was the question. The issue has been resolved against the defendant by the trial court, and there being evidence to support the judgment of the court denying the writ of error coram nobis, said judgment must be and is affirmed."

We note in studying the record in the instant case that there is sufficient evidence upon which the trial court could have resolved the factual controversy in favor of the State. Although the evidence is controverted, there is evidence in the record upon which the trial court could have concluded no firm promise was made to Jones in exchange for his testimony. The fact Jones received eight (8) years imprisonment instead of the previously discussed six (6) year recommendation indicates in itself no firm promise was made to Jones for this testimony. It is this Court's opinion there is sufficient evidence in the record to support the trial court's finding.

 Further, cross-examination by defense counsel which brings before the jury facts which establish witness will receive lenient treatment for his testimony is sufficient to apprise the jury such an offer has been extended. Shapard v. State, Okl. Cr., 437 P.2d 565 (1968). Since the instant concept is predicate upon a recognition of the necessity of the exposure of such practices as they affect the credibility of the evidence, if the defense counsel exposes sufficient evidence on cross-examination to indicate possible negotiations of this nature are present, the resulting apprisal of the jury by the cross-examination accomplishes the purpose of the above rule. Excerpts from the transcript of trial read as follows:

"Q. When did somebody, who was in position of authority in Carter County, talk with you about these particular cattle we are talking about here today? How long had you been in jail when you first started discussing these six cows and four calves?

"A. Two or three weeks.

"Q. All right, and who did you discuss it with?

"A. Burke Mordy and Harold Rudd.

"Q. That is the district attorney and sheriff of this county, Carter County?

"A. Yes sir.

"Q. How long after discussing it with them—how much time elapsed until you were able to make bond?

"A. About two weeks, I think.

"Q. Pardon?

"A. About two weeks.

"Q. When did you tell them this story that you told up here today?

"A. When they questioned me about these cattle.

"Q. How many charges were pending against you here in this county, at that time, and how much bond had been set, do you remember?

"A. I got five charges here in Carter County.

"Q. No, I mean at the time you had been in jail a couple of weeks, and Mr. Mordy and Mr. Rudd were talking with you about the Cantrell cattle?

"A. Three." (Tr. 62–63)

Jones further testified that a hearing for bond reduction was held after he told the district attorney about the Cantrell cattle.

"Q. Who cut it $5,000.00

"A. District Attorney.

"Q. What?

"A. Burke Mordy, District Attorney.

"Q. This was just after you told this story about the Cantrell cattle?

"A. No.

"Q. Before.

"A. I had to a went through a hearing— had a hearing to get my bond reduced.

"Q. Okay, but was that hearing before or after you had made this statement to the district attorney and the sheriff, concerning the Cantrell cattle?

"A. It was after." (Tr. 64)

From a survey of the trial proceedings, it is this Court's opinion that the jury was apprised of those factors regarding possible negotiations and evidence sufficient to apprise the jury of the possible negotiations was introduced. Consequently, the trial court did not err in denying post-conviction relief as the intent of the general rule herein mentioned has been satisfied and there is sufficient evidence in the record of the evidentiary hearing to support the trial court's findings.

For all of the above and foregoing reasons, we are of the opinion that the Order denying post-conviction relief shall be, and the same is hereby, affirmed.

BUSSEY, J., concurs.

BRETT, J., dissents.