**L. R. ROBERTS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–941.**

Court of Criminal Appeals of Oklahoma.

April 29, 1977.

Rehearing Denied Nov. 28, 1977.

Certiorari Denied Nov. 14, 1977.
See 98 S.Ct. 485.

Clarke L. Randall, App. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Michael P. Kane, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, L. R. Roberts, hereinafter referred to as defendant, was charged by information in Case No. CRF–76–715 with the crime of Attempted Robbery With Firearms, After Former Conviction of a Felony, in the District Court, Tulsa County, in violation of 21 O.S.1971, § 801. Defendant was tried by jury and represented by counsel. The jury returned a verdict of guilty, assessing punishment at sixty-five (65) years' imprisonment in the State penitentiary. From said judgment and sentence a timely appeal has been perfected to this Court.

Although confusing, the facts are substantially as follows. The State's first witness, Larry Jackson, stated that on the 14th day of January, 1976, between 1:00 and 2:00 a.m., he, Wayne Rogers and Marion Rowe proceeded by car to the 4200 block of North Harvard, Tulsa, Oklahoma, in order to collect money owed by the defendant to Wayne Rogers. The defendant was not home so they left. Returning an hour later and still finding the defendant absent, they parked in his driveway. At this time Rogers was sitting behind the wheel and Jackson was sitting in the passenger seat in the front. Soon, another vehicle, containing the defendant among others, pulled into the driveway and parked directly behind the Rogers' car. Suddenly, two armed men exited this vehicle and approached the car in which Jackson, Rogers and Rowe were sitting. One of the men approached Rogers while the other man with shotgun in tow confronted Jackson, commanding him to "give him all his money." As Jackson attempted to comply with this demand the shotgun was discharged and he was wounded.

The State's second witness, Don Rodney McNeal, is a resident of the Oklahoma State Penitentiary. On the evening in question he was the driver of the vehicle containing Vickie McNeal, his sister, Jessie Campbell and the defendant. Approaching the defendant's house at about 12:30 p.m. he saw Rogers' car, containing three occupants, parked in defendant's driveway. McNeal turned into this driveway and parked directly behind the Rogers' car. Marion Rowe exited the front vehicle, walked back and conversed briefly with the defendant. After Rowe departed the defendant stated, "Well, are we gonna rob him?"

According to McNeal's testimony, the defendant repeatedly commanded his fellows to rob the Rogers' car occupants. Pursuant to defendant's persistent urgings, McNeal and Jessie Campbell exited their vehicle while defendant remained seated. McNeal approached the passenger side of the vehicle in front and pointed a shotgun at Jackson. Campbell stood on the driver's side and advised the occupants to give him their dope and money. Suddenly McNeal discharged his shotgun and wounded Jackson. McNeal and Campbell then returned to their car and drove ·away, dropping the

defendant off at his house where he was heard to say that he "was going to go get the dope." McNeal next saw the defendant some 45 minutes later at the defendant's house. Soon driving around together again, this time with Michael Fox and Vanessa Sadler, the defendant told McNeal that "everything was cool and not to worry about anything."

The State's third witness was Vanessa Sadler, the common law wife of McNeal. While driving around with the defendant in the early morning hours of January 14, 1976, she overheard him tell McNeal to be cool, not to start talking and that everything will be okay. Also the witness heard the defendant respond "no" to a question propounded by McNeal as to whether he had obtained any dope or money from the three on the driveway.

The State's fourth witness, Vickie Lynn McNeal, testified she was in the car with the defendant, her brother, McNeal and Campbell, on the 14th day of January, 1976, when they observed a car already parked in the driveway as they approached defendant's house. After pulling into the driveway, Rowe, an occupant of the Rogers' car, came to their car and conversed with defendant. The defendant inquired of Rowe whether McNeal and Campbell could rob them and whether they had any guns. With Rowe returning to the other vehicle, the defendant continued to insist that McNeal and Campbell rob them. When asked why the defendant did not want to commit the act, the witness stated that the defendant was concerned that the occupants of the car knew him. She stated that Campbell and McNeal exited the vehicle with Campbell carrying a handgun and McNeal a shotgun. A minute later she heard a shot. As Campbell and McNeal hurriedly returned to the car, the defendant got out of the car with a gun in hand saying he was going to get the dope.

At this time the State rested.

The defendant demurred to the evidence, which was overruled, and the defense called as its first witness, Marion Rowe.

Rowe testified that he and defendant held no conversation during the early morning hours of January 14, 1976, concerning an attempted robbery of Wayne Rogers and Larry Jackson. On cross-examination Rowe testified that he had gone to the defendant's house to borrow money. He admitted having told Detective Charles Sasser of the Tulsa Police Department that he had gone to the defendant's house for a reason other than to borrow money. Rowe admitted convictions for burglary, armed robbery and possession of marihuana. Witness Rowe identified State's Exhibit C–3 as a statement he had given to the Tulsa Police Department, in which statement he had said that the defendant had discussed the robbery with him.

The second witness for the defense was Jessie Campbell, who, although charged as a co-defendant, had earlier pled guilty. He denied having received encouragement from the defendant to perpetuate the robbery. On cross-examination, Campbell denied the veracity of any contradictory statements given to the Tulsa Police admitting defendant's participation.

The State called Detective Charles Sasser of the Tulsa Police Department as a rebuttal witness. On the 14th day of January, 1976, he took a statement from Campbell implicating defendant's participation in the attempted robbery. He testified that Campbell appeared to be calm and did not seem to be under the influence of any narcotics or alcohol. He further testified that Campbell read the statement, alluded to by the State, before signing it.

As his first assignment of error, the defendant maintains that he was denied effective assistance of counsel because of the mail surveillance policy maintained by the Tulsa County Sheriff. We must disagree. In *Goforth v. United States*, 314 F.2d 868 (10th Cir. 1963), that court held that the constitutional guaranty of assistance of counsel means effective assistance as distinguished from bad faith, sham, pretense or want of opportunity for conference and preparation.

Apparently, defendant's proposition of error speaks to the notion that the sheriff's surveillance of correspondence between the defendant and one of his attorneys denied effective assistance of counsel. The defendant was represented at trial by two lawyers, Mr. Glen Rawdon and Mr. Caesar Latimer. Both attorneys represented defendant throughout the proceedings. The record clearly shows that the defendant's counsel argued strenuously on his behalf, made appropriate objections and conducted the trial in a professional, competent manner.

 Further, the practice of allowing penal institutions to censor mail in the interest of safety or security, subject to certain restrictions, remains a viable one. 47 A.L.R.3d 1150. Mr. Rawdon, co-counsel for the defendant, advised the court that inspection of defendant's mail hampered him in his representation. However, the court advised Mr. Rawdon that his Tulsa based co-counsel, Mr. Latimer, had made numerous appearances in her court on the defendant's behalf. In *Haas v. United States*, 344 F.2d 56 (8th Cir. 1965), a similar proposition was rejected wherein the court, recognizing the legitimate interest of penal authorities in mail surveillance for security purposes, found that the defendant and his counsel had every opportunity for communication. Citing, *Haas v. United States*, supra, the Ninth Circuit rejected another similar proposition in *Ramer v. United States*, 411 F.2d 30 (1969). In that case the defendant contended that mail censorship by prison authorities effectively deprived him of the right to counsel as guaranteed by the Sixth Amendment. The court there found that the defendant's counsel and successor counsel had ample opportunity for private conferences with defendant so as to prepare both for trial and pre-trial motions. Likewise, the court found that since the defendant's attorney was aware of the mail surveillance policy no confidential matters were disclosed in the censored correspondence. In the instant case, Mr. Rawdon's naked assertion that the mail surveillance policy inconvenienced him will not rise to the level of constitutional violation, especially in view of his co-counsel's proximity to defendant showing ample opportunity for attorney-client communications.

The defendant was afforded effective and competent representation by counsel. Any mail surveillance which may have occurred did not hamper or interfere with his representation. Since defendant was afforded effective and competent counsel as guaranteed by 22 O.S.1971, § 464, the Constitution of the United States, and the Oklahoma Constitution, Art. 2, § 20, this assignment of error is without merit.

 The second assignment of error alleged by defendant concerns the trial court's refusal to grant a continuance. This oral motion was interposed by co-counsel Rawdon after voir dire and just prior to the swearing of the jury panel. A motion for continuance is directed to the sound discretion of the trial judge. *Brown v. State*, Okl.Cr., 456 P.2d 604 (1969). In the instant case we find no abuse of discretion considering the ample time given counsel to prepare, and in light of the fact that this motion was interposed just prior to swearing in of the jury panel. The record further reflects defendant's counsel made no effort to comply with statutory requirements fundamental to a motion for continuance. Title 22 O.S.1971, § 584; 12 O.S.1971, § 668. Likewise, this assignment is without merit.

The defendant next alleges error in the trial court's failure to sustain his demurrer to the evidence based upon the proposition that the only evidence against him was the uncorroborated testimony of two accomplices.

The defendant's claim speaks to the notion that both Vickie Lynn McNeal and Don Rodney McNeal were accomplices and as such their testimony must be corroborated pursuant to 22 O.S.1971, § 742, which states as follows:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the cor-

roboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

■ Vickie McNeal is not an accomplice, and in reviewing a demurrer to the evidence the rule was well stated in *Lauhoff v. State*, Okl.Cr., 508 P.2d 285 (1973), as follows:

" . . . We have repeatedly held that where there is competent evidence reasonably tending to sustain the allegations of the charge, the trial court should not sustain a demurrer to the evidence. . . . " (Citations omitted)

■ Although she was present, there was no evidence to indicate the participation of Vickie McNeal. She never left the vehicle, nor did she plan or encourage the attempted robbery. She could not have been indicted by the State and could not be deemed an accomplice, and her testimony would be sufficient to corroborate the defendant's involvement in the crime. As to the testimony of Don Rodney McNeal, it was indeed corroborated. See, *Howard v. State*, Okl.Cr., 561 P.2d 125 (1977). Furthermore, the testimony of Vanessa Sadler provides sufficient corroboration. Vanessa Sadler testified concerning a conversation overheard between the defendant and Don Rodney McNeal and related that the defendant said "be cool . . . don't start talking and everything will be okay." When asked whether defendant got any dope or money, defendant responded "no." Although circumstantial, defendant's admissions link him directly with the commission of the offense. The testimony of Vanessa Sadler places the defendant and Don Rodney McNeal together discussing the attempted robbery near both in time and location to its actual occurrence.

■ It is important to note that an accomplice's testimony need not be corroborated as to all material aspects. In *Rose v. State*, Okl.Cr., 509 P.2d 1368 (1973), this Court quoting from *Nation v. State*, Okl. Cr., 478 P.2d 974 (1971), stated:

" 'It is the law in this state that an accomplice's testimony need not be corroborated as to every material point. If the accomplice is corroborated as to one ma-

terial fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all.' "

■ As we held in *Sizemore v. State*, Okl.Cr., 507 P.2d 1330 (1973), and *Brown v. State*, Okl.Cr., 518 P.2d 898 (1974), statements by an accomplice may be corroborated by circumstantial evidence. In *Barrett v. State*, Okl.Cr., 357 P.2d 1020 (1960), speaking to the weight to be given such corroborating evidence, this Court quoted from *Taylor v. State*, 90 Okl.Cr. 283, 213 P.2d 588 (1950), as follows:

" 'Where there is evidence in corroboration of an accomplice tending to connect a defendant with the commission of the crime charged, the sufficiency of such corroborating evidence is for the jury.' "

■ In *Brown v. State*, supra, we reiterated the doctrine that if one material fact corroborates an accomplice's testimony the jury is free to infer the general truthfulness of the witness. This was apparently the view taken by the jury considering its finding of guilt and recommendation of punishment. This Court will take the strongest view of corroborating testimony such testimony will warrant. See, *Sanders v. State*, Okl.Cr., 341 P.2d 643 (1959). The testimony of Don Rodney McNeal was sufficiently corroborated by Vanessa Sadler and by Larry Jackson.

For the above reasons we find this assignment of error to be without merit.

The defendant's fourth assignment of error alleges that he was prejudiced and denied a fair trial due to the presence of armed deputies in the courtroom. The defendant argues that the trial court violated 22 O.S.1971, § 15, which provides:

"No person can be compelled in a criminal action to be witness against himself; nor can a person charged with a public offense be subjected before conviction to any more restraint than is necessary for his detention to answer the charge, and in no event shall he be tried before a jury while in chains or shackles."

In support of this, the defendant cites *French v. State*, Okl.Cr., 377 P.2d 501

(1962), for the proposition that two inherent rights are guaranteed by the statute. One is the right to a presumption of innocence, and the other is the right of a prisoner to appear in court free of all shackles and bonds.[1]

On the outset we must state that the case at bar is factually distinguishable from *French*, wherein the defendant was brought into the courtroom shackled and handcuffed, and also distinguishable from *Moore v. State*, Okl.Cr., 430 P.2d 340 (1967), where the jurors toured the city jail and observed the defendant behind bars. We held that no prejudice occurred when a defendant was seen by the jury in the custody of a uniformed police officer. See, *Lott v. State*, Okl.Cr., 491 P.2d 337 (1971).

We are of the opinion that the trial judge acted properly with regards to courtroom peace and decorum by allowing the in-court presence of armed deputies. From the record in the instant case it is apparent that the trial judge was concerned about the activities of courtroom spectators. This apprehension appears to have been well founded. Continually throughout the entire proceedings the trial court articulated its concern about the necessity of keeping order. At the beginning, the court made the following statement:

"Before we proceed, I want to say that the audience has been whispering making gestures and talking. I'm not going to put up with that. If you can't be still, you won't stay in the Courtroom. . . ."

Again the court in the presence of the jury instructed the spectators as to the following:

"Before we start, I want to still tell the spectators, I don't want them making any gestures or talking in Court or trying to pass material to the Defendant. . . ."

Finally, during the defendant's motion for new trial the court once again articulated the reason for the presence of the deputies:

"I think we've gone over this all before, Mr. Rawdon except about the armed guards in, and the armed guards were here because of the actions of the spectators. It's my understanding that the guards found several weapons on the spectators."

Clearly, the right of the trial judge to maintain the peace, order and dignity of his courtroom is a proper exercise of judicial authority. *Snow v. State*, Okl.Cr., 453 P.2d 274 (1969). The defendant was neither shackled nor handcuffed, but counsel for the defendant would have this Court extend the proscription of 22 O.S.1971, § 15, to the presence of any armed guards in the courtroom. This Court has sanctioned the presence of armed guards in the courtroom where the defendant is in lawful custody. *Vavra v. State*, Okl.Cr., 509 P.2d 1379 (1973). This defendant was charged with a serious crime involving the use of a firearm, after former conviction of a felony. The actions of the trial judge were entirely proper in insuring order in the courtroom. In *Hart v. State*, Okl.Cr., 535 P.2d 302 (1975), this Court said:

" . . . The requiring of the presence of a peace officer in the courtroom during a criminal trial for protection of all concerned is within the sound discretion of the trial court. . . . " (Citation omitted)

Considering the disturbances emanating from the spectators, the presence of armed deputies, contrary to denying defendant a fair trial, rather contributed to the timely and orderly determination of the issues. We therefore find no merit in defendant's allegation of error.

In his fifth assignment of error, the defendant alleges the trial court abused its discretion in not allowing both attorneys for the defendant to make the closing argument.

---

1. It should be pointed out, however, that the decision in *French v. State*, supra, was expressly overruled in *Peters v. State*, Okl.Cr., 516 P.2d 1372 (1973), to the extent that we held the right to be free of shackles may be waived by the defendant who engages in disruptive or disrespectful behavior.

The relevant statute concerning this issue is 22 O.S.1971, § 831, ¶ 6:

"Thereupon, unless the case is submitted to the jury without argument, the counsel for the State shall commence, and the defendant or his counsel shall follow, then the counsel for the State shall conclude the argument to the jury. During the argument the attorneys shall be permitted to read and comment upon the instructions as applied to the evidence given, but shall not argue to the jury the correctness or incorrectness of the propositions of law therein contained. The court may permit one or more counsel to address the jury on the same side, and may arrange the order in which they shall speak, but shall not without the consent of the attorneys limit the time of their arguments. When the arguments are concluded, if the court be of the opinion that the jury might be misled by the arguments of counsel, he may to prevent the same further instruct the jury. All instructions given shall be in writing unless waived by both parties, and shall be filed and become a part of the record in the case."

Therefore, this assignment of error is without merit.

As defendant's next assignment of error, he alleges that the trial court incorrectly instructed the jury concerning 21 O.S.1971, § 51. Title 21 O.S.1971, § 51, provides for punishment of criminals convicted of second subsequent offenses as follows:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction is punishable therefor as follows:

"1. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five (5) years, such person is punishable by imprisonment in the penitentiary for a term not less than ten (10) years.

　　*　　*　　*　　*　　*　　*

"3. If such subsequent conviction is for petit larceny, or for any attempt to commit an offense which, if committed, would be punishable by imprisonment in the penitentiary, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding five (5) years."

The defendant points to paragraph number 3 as the appropriate paragraph upon which to instruct the jury, urging that five years' imprisonment should have been the maximum sentence.

■ In the present case defendant was charged for an attempted crime after former conviction of a felony. While the instructions were not made part of the record on appeal, the trial court properly overruled the defendant's request for an instruction under paragraph number 3 of the above described statute.

This Court has held in *Hines v. State*, Okl.Cr., 557 P.2d 917 (1976), that the sole purpose of the legislature in enacting Section 51 was to provide for an enhanced punishment for subsequent offenders, not to decrease punishment. See also, *Bean v. State*, Okl.Cr., 392 P.2d 753 (1964), and *Dillon v. State*, Okl.Cr., 508 P.2d 652 (1973). This proposition is entirely without merit.

■ As defendant's seventh assignment of error, he claims that remarks made by the Assistant District Attorney served to deny him of a fair trial. In considering the scope of closing argument we have repeatedly held that the right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoints the evidence and the inferences and the deductions arising therefrom. *Harvell v. State*, Okl. Cr., 395 P.2d 331 (1964).

■ In the instant case the defendant's objection goes to the Assistant District Attorney's characterization of the defendants as being "trash." Although the facts would seem to justify such a reference a different phraseology would be preferable. Certainly, this lone reference does not rise to the level of prejudicial error. See, *Klinekole v. State*, Okl.Cr., 456 P.2d 623 (1969). The prosecutor's allusion to "trash" was less

forceful than the language used by the prosecutor in *Watts v. State*, Okl.Cr., 487 P.2d 981 (1971), wherein the defendant was referred to as a "dangerous animal." In affirming the conviction this Court quoted from the case of *Ramos v. State*, Okl.Cr., 445 P.2d 807 (1968), where the Court upheld a conviction wherein the prosecutor alluded to the defendant as a "rabid animal." Therefore, this assignment of error is without merit.

 Finally, in defendant's pro se brief, he alleges error in that the State's attorney knowingly allowed State's witness Don Rodney McNeal to put false evidence before the jury. The defendant's proposition is based upon the testimony of Don Rodney McNeal who, while a witness was serving two concurrent 20 year sentences, stated that the Assistant District Attorney had promised to help place him on an honor farm. Defendant claims that: (a) McNeal testified falsely, and (b) the Assistant District Attorney, cognizant of his falsehood, did nothing to correct or inform the jury. In the instant case the appearance docket reflects that McNeal was resentenced following defendant's trial, receiving ten years on each of three cases. To support his allegation, defendant cites the case of *Hurt v. State*, Okl.Cr., 312 P.2d 169 (1957) and *People v. Savvides*, 1 N.Y.2d 554, 154 N.Y. S.2d 885, 136 N.E.2d 853 (1956). The *Hurt* case stands for the proposition that where a co-defendant, induced by promise of leniency, testifies for the State but denies any such agreement on the stand, such constitutes reversible error if the County Attorney knowing such statement to be false stands silent. In both *Hurt v. State*, supra, and *People v. Savvides*, supra, the accomplice's testimony was elicited by promise of leniency, but this fact was not divulged to the jury. Denied knowledge that concessions were made to an accomplice, the jury was denied essential information necessary to properly evaluate the witness' testimony. In *People v. Savvides*, supra, while his witness testified to the jury that there had been no promises of leniency, the Assistant District Attorney remained silent. While there does appear to be some discrepancy between the leniency testified to at trial and the final outcome, the law remains the same. Any promises of leniency must be discussed in the presence of the jury so that they may better assess the credibility of the State's witnesses. However, during the course of the trial both sides exposed sufficient evidence to indicate negotiations of this nature were in progress. In *Shapard v. State*, Okl.Cr., 437 P.2d 565 (1968), this Court held that cross-examination by defense counsel which brings before the jury facts that the witness will receive lenient treatment for his testimony is sufficient to apprise the jury that such an offer has been extended. By reviewing the transcript we are convinced that full disclosure was made to the jury and, moreover, defense counsel had opportunity to argue this point of credibility to the jury. We specifically spoke to this issue in the case of *Marutzky v. State*, Okl.Cr., 512 P.2d 211, 213 (1973). In that case the Court noted:

"Further, cross-examination by defense counsel which brings before the jury facts which establish witness will receive lenient treatment for his testimony is sufficient to apprise the jury such an offer has been extended. . . . Since the instant concept is predicate upon a recognition of the necessity of the exposure of such practices as they affect the credibility of the evidence, if the defense counsel exposes sufficient evidence on cross-examination to indicate possible negotiations of this nature are present, the resulting apprisal of the jury by the cross-examination accomplishes the purpose of the above rule. . . . " (Citation omitted)

For the above reason we find this assignment of error to be without merit.

It is, therefore, the opinion of this Court that the judgment and sentence should be, and hereby is, *AFFIRMED.*

BUSSEY, P. J., concurs in results.

BLISS, J., concurs.